ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY v. GRIDER.

Opinion delivered December 8, 1913.

1. CARRIERS—DUTY AS TO PLATFORMS.—A railroad company is bound to exercise ordinary care to keep its station platform in a safe condition for the use of its passengers and others who have a right to go there. (Page 342.)

2. CARRIERS—PLATFORMS—INJURY TO PASSENGER.—A carrier is liable for an injury to a passenger occasioned by the unsafe condition of a station platform, where the platform was so located that passengers expecting to take passage on trains leaving the station would naturally and ordinarily be likely to go upon it (Page 343.)

3. CARRIERS—DUTY TO PROVIDE SAFE PLATFORMS.—A carrier is not excused from liability to a passenger who was injured by stepping through a defective station platform, because the platform was constructed for use as a freight platform, when the same was customarily used by passengers; nor will the fact that it provided an adequate waiting room, excuse the carrier from liability. (Page 343.)

Appeal from Mississippi Circuit Court, Osceola District; *W. J. Driver,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellee instituted this suit in the circuit court of Mississippi County to recover damages for certain injuries received by him from falling through appellant's depot platform at the station of Grider, in said county, March 8, 1912.

The suit was tried at the January term, 1913, and resulted in a verdict for appellee for two thousand dollars, from which the appellant has appealed to this court.

There was no real conflict in the evidence and no complaint is now made that the damages were excessive. Appellee's testimony was substantially as follows: ''I live near Grider Station, and went to the depot just across the tracks from my store to take the northbound train for Osceola. The train was due about 7:30 P. M., but was about fifteen minutes late. I came to the station at night and stopped at the store and stood there and talked until about train time, and I walked over to the depot and sat in the waiting room a while, and the train didn't come, and I got restless. When the train did not come on time, I walked out the door; the train approached there from the south, going north; I walked to see if I could see it down the track and I walked out there and couldn't see any lights, and so I just thoughtlessly wandered around on that side of the platform there that adjoins that other one; there's a railing around all of them which nearly every one that comes to take a train uses, and after I made a few steps on to the platform, my right foot all at once just went right down and my whole weight right on it, you know, and then the floor had pulled away (indicating), and I had to crawl up over this sprained foot to keep from rolling under the depot.'' Appellee further testified that the platform where he was injured was only about five feet from the door of the passenger waiting room, and although it was constructed as a freight platform, it was seldom used as such, that it was commonly used by passengers who were waiting

for trains, and that there was a railing about waist high on its south side which prevented passengers from walking off of it, and that he had many times walked on it in perfect safety, and he supposed it was safe at the time of his injury. Witness lived near the depot, and was frequently a passenger there, and had at one time been the agent at this station, and had seen many passengers standing on this platform. This platform was built to the south end of the depot, and was on a level and connected with the platform between the depot and the railroad tracks. Had this railing been on the west end of the platform where appellee was hurt, it would have kept passengers who went upon it from walking off of it. There was a lamp on this platform, but it was not lighted at the time of the injury. There was no necessity for appellee to go upon this platform to take the train, and he went there because he was restless and had grown tired waiting for his train, which was behind time. All of the platform which it was essential appellee should use to enter the train was in a safe condition.

The appellee requested, and the court gave, the following instructions:

1. "It is the duty of railroad companies to exercise ordinary care to keep in reasonably safe condition all portions of their platforms and approaches thereto to which persons purchasing tickets with the view of becoming passengers upon trains would naturally or ordinarily be likely to go."

2. "If you find from a preponderance of the evidence that on the date of the alleged injury, defendant was negligent in failing to exercise ordinary care to keep in a reasonably safe condition the approach to, or portion of its platform at Grider Station, and further find that from such evidence, that such approach to or portion of its platform was located where persons purchasing tickets with a view of taking passage on defendant's train would naturally or ordinarily be likely to resort, and you should further find from such proof that plaintiff on said date had purchased a ticket with the intention

of taking passage on defendant's train, and while awaiting such train, and in the exercise of care for his own safety, was injured by stepping upon and having his ankle sprained in such defective platform or approach, you should find for the plaintiff."

3. "If you find and believe from the evidence that the plaintiff in this case failed to exercise reasonable and ordinary care for his own safety, and such failure on his part in any degree contributed to his injuries, he can not recover. The burden of proof of contributory negligence is upon defendant, who must establish the same by a preponderance of the evidence, unless the same sufficiently appears from proof on part of plaintiff."

Appellant requested two instructions numbered 1 and 2, which were both refused, and they read as follows:

1. "You are instructed that if you find and believe from the evidence that the platform in question whereon plaintiff was injured was constructed by the railroad company for the use and accommodation of its patrons in handling and discharging freight, and was not intended by the railroad company for the use of passengers in going to and from its trains, or to and from its depot, and you further find that it wasn't necessary for the plaintiff to occupy any portion of this platform where he was injured in reaching the depot from the trains or the trains to the depot or his home or place of business from the depot or trains, then the company was not due to keep that portion of the platform intended for the use of freight, in a reasonably safe condition, and is not liable to this plaintiff for its failure to do so."

2. "You are instructed that if you find and believe that the defendant company furnished a waiting room at the station of Grider sufficient to accommodate this plaintiff and the other passengers on the day plaintiff was injured, and also furnished sufficient platform reaching from the depot to the trains, and the plaintiff unnecessarily and in the night time, and in the darkness of the night, and without any necessity for so doing, went upon the platform provided for the use of patrons in the han-

dling of freight, and received the injuries complained of, then he could not recover."

*W. F. Evans* and *W. J. Orr,* for appellant.

Carriers of passengers are not insurers of the safety of said passengers, but, with reference to their platforms and approaches, are held only to the exercise of ordinary care for the passengers' safety. This duty to passengers does not extend to *all portions* of the station grounds, but only to those portions of the premises designated and intended for the use of passengers who are under the implied duty to use and occupy the routes, ways and premises designated for their use in transacting business with the carrier. Instruction 1, given by the court, is clearly erroneous. 48 Ark. 106. The broad language of this court in the *Orr* case, 46 Ark. 195, upon which the instructions given in this case were bottomed, is not applicable in this case under the facts.

*J. T. Coston,* for appellee.

Instructions 1 and 2, complained of by appellant, are applicable to the facts in the case and correctly declare the law as approved by this court. 46 Ark. 195; 124 S. W. (Ark.) 1035; 92 S. W. (Ark.) 791; 3 Thompson on Negligence, § 2682.

SMITH, J., (after stating the facts). We think the court did not err in giving the instructions requested by appellee and in refusing those asked by appellant, under the facts in this case. In effect, the instructions requested by appellant told the jury that if the platform on which appellee was hurt was intended for use in handling and discharging freight, and was not intended by the railroad company for the use of passengers in going to and from its trains, and that there was no necessity for appellee to occupy any portion of the platform in reaching the depot or train, that appellant was under no obligation to keep it in a reasonably safe condition, and would not be liable for its failure to do so. And further, that if a waiting room with sufficient accommodations, exclusive of the paltform in question, had been furnished,

and that appellee went upon the defective platform in the night time, when there was no necessity for him so to do, he could not recover. The duty of railroad companies in making their depots and platforms safe is announced in the case of *Texas & St. Louis Railway Company* v. *Orr,* 46 Ark. 182, where the following language was used:

"As a general rule, railroad companies are bound to keep in a safe condition all portions of their platforms and approaches thereto to which the public do or would naturally resort, and all portions of their station grounds, reasonbly near to the platform where passengers or those who have purchased tickets with a view of taking passage on the cars, or to debark from them, would naturally or ordinarily be likely to go; and especially by those routes and methods which the company have established by its own customs and practice, as here. This is well established." A number of cases are there cited in support of the court's declaration of the law. The above statement of the law has been expressly approved in the following cases, several of which quote with approval the exact language of that opinion: *St. Louis & S. F. Rd. Co.* v. *Caldwell,* 93 Ark. 286; *St. Louis, I. M. & S. Ry. Co.* v. *Dooley,* 77 Ark. 561; *St. Louis, I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 258; *Arkansas Midland Ry. Co.* v. *Robinson,* 96 Ark. 32.

Appellee's instructions in the present case substantially conformed to the law, as announced in the above cited cases, and we think were properly given under the facts in this case. These instructions do not give the passenger authority to ramble at will over the premises of the railroad company adjacent to the depot, and they impose upon the carrier the obligation and duty only of making those premises safe which passengers would likely and ordinarily use when waiting to take passage upon trains. The third instruction given at appellee's request properly told the jury that there can be no recovery if the passenger failed to exercise ordinary care for his own safety if such failure contributed in any degree to his injury. Here, the platform appears to have been but a single structure built in part of gravel or

silica and of wood, with a plank flooring, and all upon the same level, so that passengers used all portions of it alike. And while a part of it had been designed for loading and unloading freight into wagons, it was seldom used as such, and there was nothing to prevent passengers from going upon it, as they did upon other parts of the platform. Indeed, the jury might have found that the railing on the south end was an invitation to passengers for its use, for, had the railing been put upon the west side, it would have kept them off entirely.

Appellee's first instruction told the jury that it was the duty of the railroad company to exercise ordinary care to keep in a reasonably safe condition all platforms and approaches upon which passengers would naturally or ordinarily be likely to go, and we think the jury was warranted in finding that this was such a platform, and that appellant's duty was not discharged by having a safe waiting room and a safe approach therefrom to the train. The railroad company must be charged with the knowledge that passengers might not remain in the waiting rooms until the arrival of trains. Nor does ordinary care for one's safety impose such duty upon passengers, as a matter of law, so that the failure to remain in a waiting room until the arrival of the train would necessarily constitute negligence. It is true it was said in the case of *Little Rock & Fort Smith Railroad Company* v. *Cavenesse,* 48 Ark. 106, that, "the duty of the carrier to keep its platform and approaches thereto in good condition, and to provide safe and convenient means of entrance and departure creates the reciprocal duty on the part of the passengers to occupy the premises provided for their use in waiting for trains and in going to and from the carrier's depot, offices, platform and trains to use the ways and means provided for that purpose." But the facts of that case were entirely dissimilar from those of the present case, as the injured party in that case had gone to a place where the railroad company could not have anticipated a passenger would go, and where there was no duty to make the place safe. The

instructions given do not offend against the law as announced in the cases cited, while the instructions requested by appellant undertake to apply to the facts of this case the law applicable to the facts in the *Cavenesse* case, and they apparently state the law to be that the railway company was under no duty to keep the platform safe if it was designed as a freight platform, and ignores the fact that it was ordinarily and commonly used by passengers as a part of the passenger platform. It was a question of fact for submission to the jury whether appellee and other passengers had the right to be upon this defective platform, and that the railroad company should be charged with knowledge that it would be so used, and the verdict of the jury settled that question of of fact.

The judgment of the court below is therefore affirmed.