### HOLT *et al.* RECEIVERS *v.* LESLIE.

#### Opinion delivered January 25, 1915.

1. RAILROADS—ACTS OF EMPLOYEES OF RECEIVER.—Where a railroad company is in the hands of receivers, it will not be liable for damages resulting from negligent acts of employees of the receivers.

2. NEGLIGENCE—VICIOUS ANIMAL—LIABILITY.—Plaintiff, while visiting a railway and express office on business, was injured by being bitten by a dog in the custody of the agent for the express company and of the receivers of the railway company; *held,* if the receivers and express company knew that the dog was vicious and dangerous, and with such knowledge kept the dog in the depot building where the plaintiff received the injury of which he complained, the receivers and express company would be liable.

3. PRINCIPAL AND AGENT—KNOWLEDGE OF AGENT—NEGLIGENCE.—The knowledge of the agent of the receiver of a railroad company and of an express company, that a dog received as express, and permitted by the agent to go about the depot building, was vicious and dangerous, will be held to be the knowledge of the principals.

4. ANIMALS—VICIOUS DOG—KNOWLEDGE.—Where plaintiff was injured by being bitten by a dog in the custody of defendant's agent, whether the dog was vicious and dangerous and whether the agent knew it, are issues for the jury, plaintiff having been bitten while in a railway and express depot building by a dog in the custody of the agent of the express company and the receiver of the railroad company.

5. ANIMALS—VICIOUS DOMESTIC ANIMAL—EXPRESS COMPANY—SCIENTER.— If one knowingly keeps a vicious or dangerous domestic animal, one accustomed to bite mankind, he is liable for injuries done by such animal without proof of negligence as to the manner in which the animal was kept and handled. The mere keeping of such an animal, knowing its vicious and dangerous qualities, is (except as to trespassers) at the risk of the owner, and renders him liable in damages to one injured by such animal. Without any proof of negligence, the owner of such an animal, having knowledge of its vicious and dangerous propensities, will be held liable in damages for injuries done by it.

6. ANIMALS—VICIOUS DOG—LIABILITY OF BAILEE—SCIENTER.—An express company, which is a bailee for hire, of a vicious and dangerous dog, is liable for an injury done by the dog to a person visiting its office on business, there being proof of *scienter* on the part of the agent of the express company.

7. ANIMALS—VICIOUS DOG—LIABILITY OF CUSTODIAN.—One who has custody of a vicious dog, whether as owner or bailee, knowing him to be vicious, must restrain him, and if he fails to do so he will be liable in damages to any person injured thereby.

8. ANIMALS—VICIOUS DOG—DUTY OF BAILEE.—An express company which is holding a dog for delivery to the consignee thereof, is under a duty to so keep the dog that it will not cause an injury to those who have business to transact with the express company.

9. RECEIVERS—RAILROAD COMPANY—DEPOT BUILDING—DUTY TO PUBLIC.— It is the duty of the receivers of a railroad company to see that their agents exercise ordinary care to see that its depot building is maintained in a safe condition for those of the public who might have business with them.

10. RECEIVERS—RAILROAD COMPANY—NEGLIGENCE OF EXPRESS COMPANY— LIABILITY.—The receivers of a railroad company will be liable to a visitor to its depot building for an injury received by the visitor where he was bitten by a dog in the custody of the express company, which transacted its business in the same building, the agents of the express company having knowledge that the dog was dangerous and vicious, it being the duty of the receivers to protect visitors while on the depot premises.

11. PRINCIPAL AND AGENT—EXPRESS COMPANY—VICIOUS DOG—ACTS OF AGENT.—Where the agent of an express company received a dog for delivery to the consignee thereof it is the agent's duty to keep the dog until delivered, and, having knowledge that the dog was vicious, to keep him restrained.

Appeal from Searcy Circuit Court; *George W. Reed,* Judge; reversed in part, affirmed in part.

On the 3d of August, 1913, the Missouri & North Arkansas Railroad Company was in the hands of receivers and being operated by them. R. M. Warner was in their employ as station agent at Leslie, Arkansas. He was also agent for appellant, Wells Fargo & Company Express. The office of the latter company was maintained in connection with that of the receivers, at the railroad depot.

Doctor Sheridan lived at Leslie, Arkansas. His son lived at Clarence, Missouri. The son shipped to his father, through Wells Fargo & Company Express, over the railroad, a large bull dog. The dog was received at the depot at Leslie on the 3d of August, 1913; was crated and had a chain on him. The crate was marked, "Be careful. Hands off." He was placed in the wareroom of the depot at Leslie, and on the afternoon of August 3, the consignee called for him. He did not take the dog out then, giving as his reason that he did not have the dog house ready for him. The express agent says that he did not take the dog because he did not have the money with which to pay the express charges. The dog had been crated three days before he got to Leslie. On the morning of the 5th of August, the owner still not having paid the charges and received the dog, he was uncrated. Mabrey, the check clerk at the depot, in the employ of R. M. Warner, stated that the consignee, Sheridan, showed him a letter from his son stating that he had shipped his father the dog; that he had bit a man, and he was shipping him to his father to keep awhile. Sheridan warned the witness to be careful with the dog. The witness told the agent, Warner, but he did not remember when he told him. Sheridan stated that he thought he told both Warner and his clerk, Mabrey, that his son said the dog was dangerous. He did not instruct them to take the dog from the crate. He did not refuse to immediately receive the dog because he was vicious, but was delaying in order to get a house for the dog so that he could put him in his barn. When he

went to the depot and told Mabrey, the clerk, about what was contained in the letter parties were around the crate poking at the dog. Sheridan told them that they had better let him alone.

The clerk, Mabrey, stated that the dog was "tolerably peaceable while he was in the crate and there was not anybody around him, but after they took him out and he was rested he seemed to be pretty bad. They kept him chained and he would lunge at anybody that came around. He had been in the crate a good long while and they took him out to stop his barking."

Warner, the agent, had seen the dog "lunge at lots of people." The dog was chained in the depot, being in the freight room some and in another room where they kept the ticket case and copying table some. He was kept in the freight room where people would go in to get their freight.

Agent Warner testified that he received the dog as the agent for the Wells Fargo & Company Express, and that he was in the custody of that company; that he had no authority from any one to take the dog out of the crate and he was not authorized to do so by any of his employers. He was taken out of the crate by witness' son or Mabrey, his clerk. He was not permitted to run at large around the depot, but was on the chain all the time. He stated that he did not see anything to indicate that the dog was vicious or dangerous; that he could handle him with ease and had no fear of him. He denied that Sheridan had shown him any letter from his son stating that the dog was a vicious or dangerous dog.

On the afternoon of August 5, the appellee, a man fifty-two years of age, went to the depot to get some sugar that had been shipped to him at Leslie. The agent's son had gone in the freight room after the dog and came out through the office with him. The dog was walking in front of the boy and the boy had hold of the chain. The appellee, Leslie, had gone into the depot to inquire about his sugar, and he states that as he stepped out of the depot door the dog grabbed him by the calf of his leg, biting him and inflicting a serious injury. He states

that the dog was in the hallway; that they came through out of the waiting room into the depot building, and that the dog bit him just as he went out at the door onto the platform.

The appellee sued the appellants' alleging the shipment of the dog; that the dog was vicious, and that the agents of the appellants **were apprised** of that fact; that they negligently uncrated the dog and permitted him to go free in the depot building, and negligently kept him at the depot, and that through such negligence the appellee received his injury, for which he asked damages in the sum of $5,070.

The receivers and the express company answered separately, admitting the shipment and denying the allegations of negligence. The appellant railroad company answered, alleging that its road was being operated by the receivers, and that it had no control over them, and otherwise adopting the answers of the other appellants.

The above are substantially the facts upon which the appellee recovered judgment against all of the appellants in the sum of $500, to reverse which is the object of this appeal.

*W. B. Smith, J. Merrick Moore, H. M. Trieber* and *Troy Pace,* for appellants.

1. The railroad company can not be held liable. 44 Ark. 322.

2. Nor can the receivers be liable. 99 Am. Dec. 438; 1 R. C. L. Animals 63.

3. Nor is the express company liable. 55 Atl. 237; 56 N. E. 879; 21 Oh. 302; 14 Atl. 461; 27 Pac. 17; 24 N. E. 216; 22 Am. St. 716; Burrows on Negl., § 150; Cooley on Torts, 412, note. The carrier is not the keeper or harborer of the dog in a legal sense. 17 L. R. A. (N. S.) 431, and 40 cases cited. A carrier is not liable except for negligence. 1 R. C. L. Animals, 71 Fed. Rep. 939; 16 L. R. A. (N. S.) 445; 99 Am. Dec. 438. See also, Am. Cas. 1912, c. 753.

S. W. *Woods,* for appellee.

1. If appellee is entitled to recover, damages should be awarded for loss of time, medical treatment, pain and suffering and dread of hydrophobia. 52 Vt. 251; 18 Tex. C. App. 690; 42 Atl. 723; 1 Cyc. 899.

2. Notice to the agent is notice to the principal. 29 Ark. 99; 21 *Id.* 22; 58 *Id.* 84; *Ib.* 446; 32 *Id.* 251; 1 Cyc. 898; 8 Oh. Dec. 92. A single vicious act of a dog may be such as to imply notice. 48 Am. Rep. 253; 57 Mo. 606; 1 Rul. Cas. Law. 1117.

3. When the express company accepted the dog the company became a common carrier and must use due diligence in its care. 7 A. & E. Enc. 554, 555; 93 U. S. 174; 62 Iowa 57; 99 Am. Dec. 438.

Wood, J., (after stating the facts). (1) The appellant, Missouri & North Arkansas Railroad Company was in the hands of receivers, and the agents, through whose negligence appellee alleges his injury was received, were the agents of the other appellants and the appellant railroad company had no control over them. The appellant railroad company is, therefore, not liable. *Memphis & Little Rock Railway Co.* v. *Stringfellow,* 44 Ark. 322; *Ark. Cent. Ry. Co.* v. *State,* 72 Ark. 250.

The judgment against the appellant railroad company is reversed and the cause, as to it, is dismissed.

Agent Warner, who was in charge of the depot at Leslie, was the agent of the express company and the receivers, whom we will, for convenience, hereafter treat and designate as the appellants. They were maintaining the depot building in conjunction for the transaction of their business.

The court, among others, gave the following instruction:

"It was the duty of the defendants using said depot to use ordinary care to keep it in a safe condition for the benefit of those who had a legal right to go upon said depot premises, and I instruct you that one having business to transact with the defendants, or either of them, had a legal right to go to the said depot, and I instruct you that if from the preponderance of the testimony that

the said John Leslie had business to transact with said defendants, or either of them, that he had a legal right to go to said depot; and if you find from a preponderance of the testimony that the said John Leslie was injured while upon the premises of the said defendants, and that it resulted from the failure of the said defendants to use ordinary care to keep said depot in a safe condition, then you will find for the plaintiff.''

(2)    The court gave other instructions which, in effect, told the jury that if the appellants, the receivers and the express company, knew that the dog was vicious and dangerous, and, with such knowledge, kept the dog in the depot building whereby the appellee received the injury of which he complained then the appellants would be liable.

(3-4)    These instructions considered together, as they must be, were not prejudicial to appellants. The court properly instructed the jury under the evidence, on the question as to whether or not the receivers had exercised ordinary care to keep the depot building in a safe condition for those who had business to transact with them. See *St. Louis & S. F. Rd. Co.* v. *Grider,* 110 Ark. 437. Warner was the agent of both appellants. In maintaining the depot and in carrying on their business, his knowledge, therefore, was the knowledge of the appellants. Whether or not the dog was a vicious and dangerous one, and whether or not the agent, Warner, knew that he was a vicious and dangerous dog were issues of fact for the jury to determine. There was evidence to warrant a finding that the dog was vicious and dangerous, and that appellant's agent knew of this fact. There was testimony also to warrant a finding to the effect that, knowing the vicious disposition of the dog, the appellant's agent was negligent in not keeping him restrained or in not removing him from the depot in such manner as to prevent injury to those who had legitimate business to transact with appellants and who were injured while about such business, and therefore that the receivers were negligent in not keeping the depot in a safe condition.

The appellants complain because the court refused to give the following prayer for instruction:

"You are instructed that the liability of an express company is not the same as that of an owner, because the company were bound by their contract to take and transport the dog and keep it a reasonable time to deliver over to the consignee, and are not presumed to be liable because they kept or harbored the dog, as an absolute owner would do."

This instruction was not applicable to the facts of the case and was calculated to confuse and mislead the jury. The general doctrine as to the owners of domestic animals is as follows:

(5) If one knowingly keeps a vicious or dangerous domestic animal, one accustomed to bite mankind, he is liable for injuries done by such animal, without proof of negligence as to the manner in which the animal was kept and handled. The mere keeping of such an animal, knowing its vicious and dangerous qualities, is at the risk of the owner (except as to trespassers) and renders him liable in damages to one injured by such animal. Without any proof of negligence, the owner of such an animal, having knowledge of its vicious and dangerous propensities, will be held liable in damages for injuries done by it. See 1 Ruling Case Law, "Animals," § § 33 and 59, and cases in note. 2 Cyc. 368 and note. Scienter in such cases is the basis of liability. *F. F. Harris* v. *Carstens Pk. Co.,* 86 Pac. 1125, 6 L. R. A. (N. S.) 1164, and note.

(6-7) The prayer for instruction ignored the evidence on the part of the appellee which tended to prove that the dog was vicious and dangerous and that the appellants knew of that fact. The express company was a bailee for hire of the dog, and proof of *scienter* on its part brings it within the general doctrine above stated. Having in its possession the animal and knowing its vicious propensities, as the jury were warranted in finding, the express company was as responsible for its safe keeping and was to the same extent liable for injuries inflicted by the dog as if it had been the owner thereof.

"One who has charge of a vicious dog, whether as owner or bailee, knowing him to be vicious, must restrain him and if he fails to do so will be liable in damages to any person injured thereby." *Marsel, by next friend,* v. *Bowman,* 62 Iowa 57.   See also, *Frammell* v. *Little,* 16 Ind. 251.

The appellants contend that the court erred in refusing to grant prayers on their part submitting to the jury the question as to whether or not the uncrating of the dog and the manner of. keeping and handling the same by agent Warner was within the scope of his employment and the line of his duty.   But the court did not err in refusing to grant these prayers, as they were abstract, and, under the evidence, such prayers would have been confusing.

(8-9)   There. was no testimony to warrant the court in submitting to the jury the issue as to whether the agent, Warner, in the manner of keeping and handling the dog, was acting within the scope of his employment. The evidence shows that the consignment had not been delivered.   The express company still had the dog in its keeping at the depot, and necessarily had to keep same so as not to cause injury to those who had business to transact with it.   All these matters were proper too for the consideration of the jury on the issue as to whether or not the receivers were negligent in not maintaining the depot in a safe condition.   There was no testimony to warrant the court in submitting to the jury the issue as to whether or not the agent, Warner, in his manner of handling the dog, was acting on his own responsibility and not as agent of the appellants.   In his manner of handling the dog while the same was in the depot and undelivered to the consignee, the receivers were liable for failure upon his part to exercise ordinary care to see that the depot building was maintained in a safe condition for those of the public who might have business with them.

(10)   The express company having knowledge of the vicious and dangerous propensities of the dog, would be liable, as bailee for hire, for the injuries inflicted under

the rule above stated, and the receivers would be liable because they owed appellee the duty to exercise ordinary care to maintain the depot in a safe condition, which would involve the duty of protection against the danger caused by the failure of the express company to restrain the dog. See *St. Louis, I. M. & S. Ry. Co.* v. *Shaw*, 94 Ark. 15.

(11) The appellants contend that the act of the son of the agent in removing the dog from the crate and of the agent himself in consenting for the dog to be taken from the depot was not within the line of the agent's duty, and that therefore appellants are not liable; and they cite *Baker* v. *Kinsey*, 38 Cal. 631, 99 Am. Dec. 438. In that case Baker sued Dyer and Kinsey to recover damages for personal injuries sustained from the bite of a vicious dog and recovered judgment against them. The testimony showed that Dyer was employed as keeper and collector of a toll bridge. Kinsey, his employer, was one of the proprietors of the bridge, and Dyer, without the knowledge or consent of Kinsey, procured a dog, while a pup, and kept him at the bridge as a companion because he had a fancy for dogs. The dog was vicious and accustomed to bite mankind. He was not securely kept and was suffered to go at large, without guard or muzzle. His disposition was known to Dyer, but Kinsey never heard of the dog. The Supreme Court held that it was not shown that the dog had been put there under Kinsey's direction, and the nature of Dyer's employment was not such as to authorize or require it to be put there, and therefore reversed the judgment as to Kinsey. The facts clearly differentiate that case from this. There it was not the duty of Dyer to have and keep the dog. Here, as the agent of the express company, Warner was required to have and keep the dog, and, having knowledge of his vicious and dangerous habits, to keep him restrained. As the agent of the receivers it was the duty of Warner to exercise ordinary care to see that the depot was kept in a safe condition. So as the agent of appellants Warner was acting strictly

within the line of his duty in the manner in which he kept and handled the dog.

The judgment is correct and it is therefore affirmed.