Wanda KING *v.* Harry WESTLAKE

78-112                                    572 S.W. 2d 841

Opinion delivered November 13, 1978
(Division II)

*Wright, Lindsey & Jennings,* for appellant.

*Haskins, Eubanks & Wilson,* by: *Gary Eubanks,* for appellee.

CONLEY BYRD, Justice. For reversal of a $15,000 judgment in favor of appellee, Harry Westlake, arising out of a rear-end automobile collision, the appellant, Wanda King, who has only $10,000 in liability insurance coverage, makes the two contentions hereinafter discussed.

Her first contention is that the trial court erred in ordering her to permit appellee to present the testimony of his medical witness by means of a videotaped deposition. To support her contention appellant argues that the law does not provide for the recording and presenting of a deposition by videotape and that the presentation of the videotape left the jury with the impression that the witness' testimony was more significant than it really was. We find no merit to either argument.

Ark. Stat. Ann. § 28-104 (Repl. 1962) provides:

"The testimony of witnesses is taken in three modes:

First. By affidavit.
Second. By deposition.
Third. By oral examination."

Ark. Stat. Ann. § 28-105 (Repl. 1962) provides:

"An affidavit is a written declaration under oath, made without notice to the adverse party."

Ark. Stat. Ann. § 28-106 (Repl. 1962) provides:

"A deposition is a written declaration under oath, made upon notice to the adverse party, for the purpose of enabling him to attend and cross-examine; or upon written interrogatories."

Ark. Stat. Ann. § 28-107 (Repl. 1962) provides:

"An oral examination is an examination in the presence of the tribunal which is to decide the fact, or to act upon it, the testimony being heard by the tribunal from the lips of the witness."

The Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (1976 Supp.) provide:

"Rule 102. Purpose and Construction. — These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence, to the end that the truth may be ascertained and proceedings justly determined."

"Rule 103. Rulings on Evidence. — (a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected, . . . "

The statute upon which appellant relies is Ark. Stat. Ann. § 28-352 (Repl. 1962) which provides:

"Depositions upon oral examination. — (a) NOTICE OF EXAMINATION: TIME AND PLACE. A party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action. The notice shall state the time and place for taking the deposition and the name and address of each person to be examined, if known, and, if the name is not known, a general description sufficient to identify him or the particular class or group to which he belongs. On motion of any party upon whom the notice is served, the court may for cause shown enlarge or shorten the time.

. . .

(c) RECORD OF EXAMINATION: OATH: OBJECTIONS. The officer before whom the deposition is to be taken shall put the witness on oath and shall personally, or by someone acting under his direction and in his presence, record the testimony of the witness. The testimony shall be taken stenographically and transcribed unless the parties agree otherwise. All objections made at the time of the examination to the qualifications of the officer taking the deposition, or to the manner of

taking it, or to the evidence presented, or to the conduct of any party, and any other objection to the proceedings, shall be noted by the officer upon the deposition. Evidence objected to shall be taken subject to the objections. In lieu of participating in the oral examination, parties served with notice of taking a deposition may transmit written interrogatories to the officer, who shall propound them to the witness and record the answers verbatim."

The record here shows that in addition to permitting the videotape of the medical evidence, appellee took the precaution of also introducing the stenographically transcribed testimony.

Our law, Ark. Stat. Ann. § 28-348 (Repl. 1962), as does the law of most other common law jurisdictions, readily recognizes that in matters involving credibility of witnesses it is the better practice for the witnesses to testify orally before the tribunal which is to decide the facts. Since the use of a videotape is the best substitute for permitting testimony being heard by the trial tribunal from the lips of a witness, we are not in a position to say that the trial court abused its discretion in permitting the deposition of the medical witness by videotape instead of having the stenographically transcribed testimony read to the jury. Such action on the part of the trial court is certainly within keeping of the Uniform Rules of Evidence's admonition that the rules of evidence shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of the law of evidence. Other courts have likewise reached the same result, *Lucas v. Moss,* 498 S.W. 2d 280 (Mo. 1973).

With respect to appellant's contention that "the obviously costly and elaborate lengths to which the [appellee] went to record and present the deposition on videotape left the jury with the impression that Dr. Hundley's testimony was more significant than it really was," we are not in a position to second guess the trial court — appellant has not shown the costs involved and did not designate the videotape as a part of the record.

Appellant also contends that the trial court erred in permitting counsel for appellee to ask potential jurors whether they had liability insurance and whether they believed the size of jury verdicts in personal injury cases affects automobile liability insurance premiums.

The record shows that for some time preceding the trial date a number of liability insurance companies had run advertisements in *Time, The Wall Street Journal* and the *Smithsonian Institute* magazine aimed at jurors in general to the effect that jurors themselves were affected by the verdicts they rendered in that such verdicts resulted in increased premiums.

On voir dire by appellee's counsel and in response to questioning a number of potential jurors responded that they had read *Time, The Wall Street Journal,* or the *Smithsonian Institute* magazine. All but two of the jurors indicated that they had seen one or more of the advertisements. Thereafter, as abstracted by appellant, the record shows:

"Mr. Eubanks continued:

It is improper for either side to imply or suggest that the defendant does or does not have insurance, and the questions I will now direct to you have nothing to do with whether or not the defendant has insurance. The questions I will ask concern your insurance premiums, not insurance in this case. How many of you believe that jury verdicts affect insurance premiums?

Your insurance premiums may not be affected greatly one way or the other, but will not the verdicts that you render have some effect on your insurance rates?

Venireman Gerald Hudgens responded: Yes.

Mr. Eubanks continued:

The question I have been building up to is this: Assuming that the verdict you render could cost you a little

more or a little less money on your insurance premiums, can you listen to the testimony, the statements of counsel, and the instructions and then put aside the financial interest you have in this case because of your insurance premiums and render a verdict? (All jurors raised their hands.)"

The voir dire of the jury was obviously in good faith and as such was proper. See *Dedmon* v. *Thalheimer,* 226 Ark. 402, 290 S.W. 2d 16 (1956), where we held the purpose of voir dire examination is to enable counsel to ascertain whether there is ground for a challenge of a juror for cause, or for a peremptory challenge and that so long as counsel acts in good faith, he may, in one form or another, question prospective jurors respecting their interest in or connection with liability insurance companies.

Appellant, while recognizing the rule set forth in *Dedmon* v. *Thalheimer, supra,* states:

"Although the plaintiff's attorney tried to characterize his *voir dire* questioning as a search for the juror prejudice, the information he elicited by the questioning was of no value in determining whether the jurors had any real financial interest in the outcome of the case or any prejudice that would prevent their returning a fair verdict. What his questioning did accomplish was the thing this Court has never allowed: the implanting in the minds of the jurors the fact that the defendant had liability insurance. Even though the attorney cautioned the potential jurors that they should not interpret his questioning as indicating that the defendant did or did not have liability insurance, it was inevitable that the jurors would infer that she did."

During oral argument counsel for appellant was questioned extensively about this contention. He has not pointed to any portion of the record that he did not abstract and we have copied his abstract in full. Based upon the record as it is presented to us, we have been unable to follow appellant's contention that the voir dire by appellee's counsel inevitably indicated to the jurors that appellant had in-

surance — *i.e.* appellant's conclusion is not sustained by the record.

Affirmed.

We agree: HARRIS, C.J., and FOGLEMAN and HICKMAN, JJ.