Orval ROMINE, Appellant,

v.

Dwight KOEHN, Respondent.

No. WD 38420.

Missouri Court of Appeals,
Western District.

April 7, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1987.

Larry C. Pace, Lee's Summit, for appellant.

William J. Cason, Michael X. Edgett, Fred R. Bunch, James C. Johns, Clinton, for respondent.

Before TURNAGE, P.J., and SHANGLER and MANFORD, JJ.

TURNAGE, Presiding Judge.

Orval Romine sued Dwight Koehn for injuries sustained when a gas pump on Koehn's property failed to shut off properly, allowing leaking gas to ignite and burn Romine. At the close of Romine's evidence, the court directed a verdict against him. Romine appeals, arguing that he indeed made a prima facie case and that the court erred in entering a directed verdict.

Affirmed.

Dwight Koehn and Orval Romine were neighboring farmers. On May 21, 1984 Dwight Koehn suffered a serious back injury and was taken to Kansas City and hospitalized in an intensive care unit. The next day Romine happened to meet a friend of Koehn's,[1] Leland Dirks, who was on his way to finish planting Koehn's crops for him and who asked Romine if he wanted to help. Out of neighborly good will, Romine agreed to help plant Koehn's crops. Romine stated that to his knowledge, Koehn did not know of Romine's and Dirks' presence on his land that day, and there was no other evidence that Koehn had any such knowledge.

At Koehn's farm Dirks' son had begun filling a tractor with gasoline, but had left before the job was complete. Dirks' son had apparently left the tractor running while he was filling the tank, though it was common knowledge that it was dangerous to do so. Though he was working about the tractor, Romine testified that he was not aware the tractor was running, or he would have turned it off while the gas was pumping.

Romine noticed the gas pump was running, and he checked to see if the tank was full, turning off the gasoline flow at the pump nozzle as he did so. He decided the tank was not full, so he turned the gasoline on again. When he determined the tank was full, he attempted to turn off the gasoline flow at the pump nozzle, but this time the nozzle trigger did not work to shut off the flow. Gasoline poured out and ignited, severely burning Romine.

Romine testified that the "chances are" that the gasoline would not have ignited as it did if the tractor had not been running. Romine testified that he could not tell that the nozzle was defective and had no way of knowing about the defect until the accident. He also testified that Koehn told him after the accident that Koehn had had problems with the nozzle on prior occasions.

Romine argues that he proved a case of negligence against Koehn by proving breach of a landowner's duty to warn an invitee of a dangerous condition existing on the landowner's property. Koehn argues that Romine was, at most, a licensee. If Romine was either a licensee or an invitee, as opposed to a trespasser, the court's

---

1. Though Romine has attempted to show that Dirks was an agent of Koehn, he has not made the requisite showing that Dirks acted under Koehn's authority or control. *See Pashalian v. Big-4 Chevrolet Co.,* 348 S.W.2d 628, 632 (Mo. App.1961). Romine testified that Dirks had helped Koehn in the past, but made no showing of present agency at the time of the events in question.

analysis of the particular questions posed in this case would be the same; therefore, the court has only to decide whether Romine was entitled to the protection due a licensee, and not whether he was entitled to the additional protection due an invitee. *Compare* Restatement (Second) of Torts § 342 (1965) and § 343.

■ Romine was at least a licensee on Koehn's land. "A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement (Second) of the Law of Torts § 330 (1965). Although Koehn, of course, did not have the opportunity to consent to Romine's presence specifically, consent will be implied in situations in which custom entitles a person to assume he may enter onto land—at least until the possessor demonstrates lack of consent. Restatement (Second) of the Law of Torts § 330, Comment e. "Thus a traveler who is overtaken by a violent storm or who has lost his way, is entitled to assume that there is no objection to his going to a neighboring house for shelter or direction." *Id. Accord, Garrard v. McComas*, 5 Ohio App.3d 179, 450 N.E.2d 730, 732–33 (1982) (visitor looking for her brother's house); *Hamby v. Haskins*, 275 Ark. 385, 630 S.W.2d 37, 39 (1982) (traveler seeking directions). In this case, Romine was following a cherished American custom of helping a neighbor in need. Under these circumstances, Romine was perfectly entitled to assume he had Koehn's permission to enter onto Koehn's land to perform his acts of beneficence. Thus, while there is no need to decide whether Romine was also an invitee on the land, he was at least a licensee.

Though the duties owed by a possessor of land to invitees and licensees, respectively, for conditions existing on the possessor's land varies in some particulars, *compare* Restatement (Second) of the Law of Torts §§ 342 and 343, in either case the threshold question for liability is whether the condition on the land "involves an unreasonable risk of harm" to the person in question. *Id.; Wells v. Goforth*, 443 S.W.2d 155, 158 (Mo. banc 1969); *Gilpin v. Gerbes Supermarket, Inc.*, 446 S.W.2d 615, 618 (Mo. banc 1969). In this case, the common threshold question is determinative, for this court concludes that under the particular circumstances of this case, there was no proof of a condition presenting an unreasonable risk of harm to Romine on Koehn's property.

The concept of unreasonable risk carries the idea of foreseeability as developed in the law of negligence, and application of that concept requires the court to decide how far the defendant's duty to foresee extends. *Springer v. Pearson*, 96 Idaho 477, 531 P.2d 567, 569 (1975) (homeowner not obliged to anticipate that guest would take hold of cellar doorknob and lean against it).

■ In this case, prior to his injury Koehn had no reason whatsoever to anticipate either that he would be absent from his farm and unable to control events there, or that Romine would be present on the farm. Romine has made no showing that Koehn had any reason to anticipate that anyone other than Koehn himself would be operating the gas pump on his farm. There was an alternate means of turning off the pump, at the main body of the pump, rather than the nozzle. Moreover, Romine testified that the apparent cause of the ignition of the gas was the fact that the tractor was left running, which Romine admitted was not the usual practice and was known to be dangerous.

Under all the circumstances of this case, this court concludes that Koehn was not obliged to anticipate that he would be away from his farm, *incommunicado* in a hospital, that neighbors would volunteer to plant his crops without his knowledge, and that someone would leave a vehicle running while filling it from Koehn's gas pump. The solution suggested by Romine that Koehn should have attached a warning to the nozzle would require every landowner to post warnings on his property, even on portions where he did not expect anyone else to be present. This would be an intolerable burden on owners and occupiers of land. Under other circumstances, a malfunctioning gas nozzle could easily involve an unreasonable risk of harm to a licensee,

but under the facts of this case, no such unreasonable risk existed.

The trial court correctly entered the directed verdict.

The judgment is affirmed.