WATKINS MOTOR LINES. INC. *v.* Bobby HEDRICK and
Cindy Hedrick, His Wife

93-915                                          873 S.W.2d 814

Supreme Court of Arkansas
Opinion delivered April 25, 1994

*Daggett, Van Dover & Donovan*, by: *Robert J. Donovan* and *J. Shane Baker*, for appellant.

*Easley, Hicky & Cline*, for appellees.

STEELE HAYS, Justice. The appellees, Bobby Hedrick and Cindy Hedrick, were injured in a collision with a tractor-trailer owned by the appellant, Watkins Motor Lines, Inc. (Watkins). On May 25, 1991 Mr. and Ms. Hedrick were crossing the Hernando-Desoto Bridge between Memphis, Tennessee, and West Memphis, Arkansas. The Hedricks were travelling in a westerly direction and were struck from the rear while on the bridge. Watkins appeals a jury award of $125,000 to appellee Cindy Hedrick and $10,000 to appellee Bobby Hedrick.

On appeal, Watkins raises five points of error: (1) the circuit court erred in failing to grant a mistrial after the Hedricks' attorney questioned the jury during voir dire regarding liability insurance; (2) the circuit court erred in refusing to set aside the judgment under ARCP Rule 60(b) because of the Hedricks' misrepresentation of their marital status; (3) the verdict is excessive; (4) the circuit court erred in permitting the Hedricks' counsel to question Watkins's driver regarding the issuance of a traffic ticket after the accident; and, (5) the circuit court erred in ruling that it had *in personam* jurisdiction. We reverse and remand for a new trial.

## Jurisdiction

Because the situs of the collision was subject to doubt, much of the argument before the trial court focused on whether Arkansas had *in personam* jurisdiction over Watkins under the Uniform Interstate and International Procedures Act, Ark. Code Ann. § 16-4-101 (Supp. 1993). In their complaint, the Hedricks alleged the accident occurred in Arkansas and, alternatively, that Watkins was authorized to do business in Arkansas and its tractor-trailer was in the process of actually entering Arkansas.

At a hearing on Watkins's ARCP Rule 12(b)(2) motion the proof revolved on whether Watkins transacted any business in Arkansas. It was undisputed that Watkins was authorized to do business in Arkansas, maintained a trucking terminal in Little Rock, engaged in business in Arkansas, and that

Watkins's truck was on the Hernando-Desoto Bridge leading into Arkansas.

At trial the proof established that the accident occurred while both vehicles were on the Hernando-Desoto Bridge. Since the parties were driving in a westerly direction (from Memphis towards Arkansas), they had to enter Crittenden County, Arkansas in order to traverse the bridge. Although the Arkansas State Police were initially contacted, it was stipulated that the accident was investigated by the Memphis City Police.

In the order denying Watkins's Rule 12(b)(2) motion, the trial court found the collision arose directly out of Watkins doing business in Arkansas. Ark. Code Ann. § 16-4-101 (1987). However, Watkins contends because the Hedricks failed to prove the accident actually occurred in Arkansas, their claims could not arise from Watkins transacting business in Arkansas. Watkins relies upon *Malone & Hyde, Inc.* v. *Chisley*, 308 Ark. 308, 825 S.W.2d 558 (1992), where we held personal jurisdiction was lacking where no facts were alleged in the pleading as to how an accident occurring in Tennessee arose from transacting business in Arkansas by the defendant corporation. But the decision in *Malone* simply holds that the complaint failed to allege sufficient facts to connect the transaction of business in Arkansas to the accident which occurred in a foreign state.

In this case, however, jurisdiction is not dependent on Ark. Code Ann. § 16-4-101 (Supp. 1993), because at trial the proof was not in dispute as to the point of the collision. Watkins's driver, Larry White, testified the collision occurred on the bridge "about three-quarters of a mile in Arkansas." There was no proof to the contrary. Thus, Arkansas acquired personal jurisdiction over Watkins because the Hedricks's cause of action arose directly from an act committed in this state by the agent of Watkins. Ark. Code Ann. § 16-58-120 (1987).

### Liability Insurance

Watkins contends the circuit court erred in failing to grant a mistrial after counsel questioned prospective jurors as to whether they had any interest in any liability insurance company. It is improper to unnecessarily call to the jury's attention the fact that there is insurance in a case. *Superior Forwarding Co.* v.

*Sikes*, 233 Ark. 932, 349 S.W.2d 818 (1961). The general rule is that if a party's counsel acts in good faith, he may, in one form or another, question prospective jurors during the voir dire with respect to their interest in, or connection with, liability insurance companies. *Fuller* v. *Johnson*, 301 Ark. 14, 781 S.W.2d 463 (1989). Finally, we will not reverse a ruling of the trial judge in permitting inquiries intended to elicit any possible bias or prejudice that might influence a veniremen's verdict in the absence of a manifest abuse of that discretion. *Parker* v. *State*, 265 Ark. 315, 578 S.W.2d 206 (1979).

Counsel for the Hedricks asked the following questions during voir dire:

> Now, do any of you own stock in a liability insurance company, own any stock? Any of you ever been an employee of a liability insurance company? I know, Mr. Gilly, you're an agent, because you told me before.

> Anybody ever been involved in any way in claims adjustment for an insurance company, or a railroad, or manufacturing company, anything like that?

Watkins contends counsel did not act in good faith because he was aware Watkins was not insured. In fact, the Hedricks' counsel stated: "the property damage check which we received in this case was from Waco Fire and Casualty Insurance Company which led me to believe that he was insured, but I just learned yesterday that he was uninsured." Although counsel admitted he knew Watkins was uninsured, he maintained the reason for the questions was to determine "whether there's any bias or prejudice in the mind of the juror that would lean that juror toward a liability insurance carrier which would carry over into the area of a lawsuit, which would cause them theoretically to favor the defendant."

Watkins contends that because counsel knew Watkins was not insured the questions were not asked in good faith. Watkins relies on *Dedmon* v. *Thalheimer*, 226 Ark. 402, 290 S.W.2d 16 (1956), where we outlined the standard for questioning the venire regarding liability insurance. We stated:

> The test of whether counsel may ask questions of veniremen in regard to insurance is whether the questions are

propounded in good faith. *If counsel, in good faith, thinks that liability insurance is involved, then he may ask questions calculated to bring to light any bias or prejudice a venireman may have for or against insurance companies.* [Our emphasis.]

Spanning several decades, our cases indicate that where liability insurance is involved good faith is satisfied. *See*, e.g. *Hamby v. Haskins*, 275 Ark. 385, 630 S.W.2d 37 (1982). *Rambo v. Rambo*, 195 Ark. 832, 114 S.W.2d 468 (1938); *Ellis & Lewis v. Warner*, 182 Ark. 613, 32 S.W.2d 167 (1930); *Pekin Stave & Mfg. Co. v. Ramey*, 104 Ark. 1, 147 S.W. 83 (1912). In every case we have located it was clear, or at least assumed, that insurance was involved. However, we have not heretofore addressed the propriety of such questions where the defendant is uninsured. In *King v. Westlake*, 264 Ark. 555, 572 S.W.2d 841 (1978), we upheld a trial court's ruling permitting plaintiff's counsel to ask potential jurors whether they believed the size of jury verdicts affected their insurance premiums. Although there was no indication that insurance was involved, we determined that the plaintiff's counsel had acted in good faith. In reaching the decision, we emphasized that good faith was satisfied where for some time preceding the trial date a number of liability insurance companies had advertised in several publications suggesting that jurors themselves were affected by the verdicts they rendered.

This court followed the *King* rationale in the more recent case of *Fuller*, wherein the court found the trial court erred in permitting the plaintiff's counsel to broach the subject of jury verdicts and their effect on insurance premiums without first requiring counsel to establish a proper foundation. *Fuller*, 301 Ark. at 19-A, 781 S.W.2d at 465,466.

Likewise, counsel in the present case failed to lay the proper foundation before asking his questions of the jurors. Based upon this court's holdings in *King* and *Fuller*, we must reverse and remand on this point.

## Marital Status

Watkins contends the circuit court erred in refusing to set aside the judgment under ARCP Rule 60(b) because the Hedricks misrepresented their marital status to the jury. When the Hedricks

filed this action they were married and their complaint asserts that they are husband and wife. However, they had separated and divorced by the time the case came to trial, a development which Watkins did not discover until after the trial. Watkins maintains a fraud was practiced on the court by reason of the Hedricks representing themselves as presently married when they were not.

The trial judge recognized that the testimony clearly reflected the existence of a marital relationship between the Hedricks and the jury was deliberately led to believe that was the case. He concluded, however, that they had not commited a fraud upon the jury.

We need not resolve this issue, as the problem is self-correcting, on retrial. As to the matter of the traffic ticket, we would not expect that issue to again arise and the amount of the verdict is no longer relevant.

Reversed and remanded.

CORBIN, J., not participating.