This is a case about a Charolais bull, with a "Ferdinandish" disposition, creating havoc and excitement in Opelika, Alabama, one summer day.
On September 8, 1973, Moore, the present owner of the bull, was transporting him in a stake body truck to his new owner. When the truck came to a railroad crossing in Opelika, the bull, without warning, jumped over the 7-foot metal body, onto the cab of the truck, and then to the ground. Moore, following behind in an automobile, attempted to capture the bull. Along came a young man on a motorcycle, who began circling the bull, and, at the same time, revving the motor. The bull, excited by all this action, then broke away from his would-be captors, and ran into the streets of Opelika. There he created a great deal of excitement, and — for Mrs. Clark — misery, pain, and suffering.
Mr. Orville Everette Hall, a gardener for Mrs. Clark, described the event at trial as follows:
 "A. I was cutting a little ole tree up on bank right by her drive-way. I was laying down in the bushes cutting a little ole tree and I heard some *Page 117 
puffing and a bull jumped over me, and I turned and I looked up and seen the bull. And he had his legs back like this and when it come out like that it caught my leg and broke it and —
 "Q. All right sir, let me ask you a question here, Mr. Hall. Where were you when this incident that you've described took place?
"A. At Mrs. Clark's.
"Q. Where were you on her property?
"A. Back in her drive-way.
 "Q. All right, sir. Now, if you would, describe the — I believe you said it was a bull?
"A. Yes, sir.
 "Q. That you saw come onto her property and if you would describe that bull as best you can, the bull that you saw?
 "A. He's a light colored bull, Charolais, a Charolais or whatever you call 'em.
 "Q. How long did you observe the bull, did you see it, uh —
 "A. Well probably six or seven seconds something like that, not long, I saw it good when I saw it.
 "Q. Do you have any idea how large it was with regard to whether it was, — did it appear to be a full grown bull to you?
"A. Yes, sir, it did.
 "Q. All right, sir. Now you indicated that it actually ran over you?
"A. Yes, sir, jumped over me.
"Q. What happened after that?
 "A. Well Mrs. Clark was standing down in her drive-way on the other side of the embankment, whatever you call it, and the bull jumped and it hit her and spun her around and then the next jump it took it kicked her with, I don't know if you'd call it kicked her, somein with the back leg. And the next motion he got her with the back leg.
 "Q. All right sir. How close were you standing to Mrs. Clark?
"A. I was about eight foot.
 "Q. All right. Was she standing on her property when that happened?
"A. Standing her driveway.
 "Q. Now, what took place after that, what happened to the bull after that?
 "A. It went on by and just hit the corner of her garage and that was it.
"Q. You didn't see the bull any longer after that?
"A. No, sir."
Whether or not the bull actually attacked Mrs. Clark was discussed by the witness, Coleman:
 "A. . . . Mrs. Clark was walking up the drive-way and he run by her and hit her, I believe it was with his shoulder.
* * * * * *
 "A. Well he hit her with his shoulder and knocked her off balance and as he went on by her he kicked up with his back legs, you know like a bull does and he caught her right across the mouth."
On cross-examination, the witness said:
 "Q. Well now the bull did not butt into her with his head directly then did he?
"A. No.
 "Q. And the bull was not attempting to gore her with his head or anything like that?
"A. No."
Emily Clark brought suit against Moore for damages for personal injuries. Frank Clark, her husband, sought damages for loss of consortium. Counts 1 and 3 alleged a cause of action based on trespass to real property. Counts 2 and 4 sought relief based on Moore's wrongful and improper keeping of an animal with dangerous propensities. The complaint as amended by Counts 4A and 4B alleged that Moore so negligently transported the bull through Opelika as to allow it to escape.
Counts 2, 4, 4A and 4B were submitted to the jury, and a verdict was returned for the defendant. The court granted motions to *Page 118 
dismiss, and for directed verdict as to Counts 1 and 3. The Clarks' motion for judgment n.o.v. or, in the alternative, a new trial, was denied.
The Clarks allege error by these two issues: (1) Was Moore, the owner of the bull, strictly liable for damages for trespass by the bull on the Clarks' property? (2) May damages for personal injuries caused by a bull to a person who is the owner and possessor of land be recovered from the owner of the bull in an action for trespass upon the land by the bull? To each question we answer no, and affirm the trial court.
The Clarks contend that the stock laws found in Tit. 3, §§ 77-101 of the Ala. Code are applicable here, and Moore is, therefore, liable in damages to them. Tit. 3, § 78, Code of Alabama, provides that it is unlawful for an owner of livestock "to knowingly, voluntarily, negligently, or wilfully permit . . . livestock . . . to go at large . . . either upon the premises of another or upon . . . streets in . . Alabama." Tit. 3, § 79 provides that "[t]he owner of . . . livestock or animal being or running at large upon the premises of another . . . shall be liable for all damages done to crops, shade or fruit trees or ornamental shrubs and flowers of any person . . ." Tit. 3, § 93 (1) provides that "[t]here shall be no `open range counties' . . . and . . . it shall be unlawful for . . . bulls . . . to go at large in any county in the state." Tit. 3, § 100 provides that "no livestock . . shall run at large in any city . . . of five thousand inhabitants or more."
The Clarks claim that by virtue of these statutes, when read and construed together, Alabama has adopted the common law doctrine of trespass by cattle. We do not decide this, but we do find that, assuming that the common law did apply, they could not succeed in this appeal.
The terms "run at large," "go at large," and "being or running at large" as used in these statutes mean that the animals are free from restraint or control by the owner. Elliott v. Kitchens,111 Ala. 546, 20 So. 366 (1895). Thus the bull, while being transported, was under the restraint or control of his owner. To be liable, Moore must have been shown to be negligent in transporting his bull, or negligent in permitting him to escape. Under the common law, the owner was liable in negligence if an injury to a person resulted when he failed to exercise reasonable care in controlling his animal being driven along the highway.Turner v. Coates, 1 K.B.D. 670 (1917). In Tillett v. Ward, 10 Q.B.D. 17 (1882), an ox, while being driven through a town, ran into a shop and caused damage to goods. No action lay because it was not shown that the drover was negligent.
The Clarks did not prove negligence on the part of Moore while transporting the bull; the jury found that he was not negligent; and the trial judge denied a motion for new trial.
We hold the trial judge properly dismissed the trespass counts, and directed a verdict as to them, and was correct in overruling the Clark's motion for judgment n.o.v. or, in the alternative, a new trial.
AFFIRMED.
HEFLIN, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.