The Martinsons, plaintiffs, appeal from a judgment entered upon a jury verdict in this action to recover damages for personal *Page 1385 
injuries allegedly caused by the defendants. We affirm.
Mr. and Mrs. Martinson and their son were injured when their car was struck in the rear by a car owned by Mr. Cagle and operated by his 16-year-old son, Bradley Cagle. Brad's best friend, Mike Adams, aged 15 years, was a passenger in the Cagle car at the time of the accident.
The Martinsons' complaint contains, in Count One, allegations that Brad and Mike, as joint venturers, had negligently, wantonly, or willfully caused the injuries to the Martinsons. Count Three contains allegations that Brad and Mike had aided and abetted and acted as an accomplice for each other in the commission of six crimes, as a result of which the Martinsons were injured. Counts Five, Six, and Seven are restatements of parts of Count Three. Count Four alleges that Brad and Mike committed an assault and battery on the Martinsons, and Count Eight alleges a conspiracy to commit an assault and battery. Against Mr. and Mrs. Cagle, the Martinsons claim damages in Count Two for the negligent entrustment of the automobile to Brad.
Counts Three, Five, Six, and Seven were dismissed upon defendants' pre-trial motion. At the close of the trial, the trial court also granted the defendants' motion for directed verdict as to Counts Four and Eight. The only counts submitted to the jury were those alleging negligent entrustment by Mr. and Mrs. Cagle and negligence and wantonness by Brad and Mike. The jury returned a verdict in favor of the Martinsons and against Brad on the negligence claim and verdicts in favor of the other defendants on the remaining claims. Judgment was entered accordingly. The Martinsons appeal from this final judgment.
The Martinsons contend that it was error to dismiss Counts Three, Five, Six, and Seven, and to grant a directed verdict as to Counts Four and Eight.
With regard to the four counts seeking civil liability for the criminal acts allegedly committed by Mike and Brad, they rely upon an early case in which this Court said that "every criminal act which injures the person or property of another is also a civil tort, redressable by the courts." Hardie-TynesManufacturing Co. v. Cruse, 189 Ala. 66, 78, 66 So. 657, 661
(1914). The rule can be more properly stated as follows: Even though an act may constitute a crime, if it also results in injury to the person or property of another, the act may still be the basis of a civil action for damages. However, civil liability will ensue only if the acts complained of violate the legal rights of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted. These four counts, which allege only that the criminal acts were committed and that the Martinsons were thereby injured, do not state a cause of action for which relief may be granted, even if liberally construed. Dempsey v.Denman, 442 So.2d 63 (Ala. 1983).
Counts Four and Eight charge Brad and Mike with assault and battery and a conspiracy to commit assault and battery. It was not error to direct a verdict on each of these counts. The evidence fails to establish a claim on either theory. See Cityof Birmingham v. Thompson, 404 So.2d 589 (Ala. 1981).
The Martinsons also allege that it was error for the trial court to refuse to give certain instructions on the negligence count regarding Mike's right to control Brad and the automobile on the night of the accident. After instructing the jury on negligence and wantonness, the trial court stated that it must find a joint venture existed in order to hold Mike liable. It gave this charge on joint venture:
 "A joint venture is a special combination of two or more persons undertaking jointly some specific venture for profit, without any actual partnership or corporate designation. In order to be a joint venture there must be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct *Page 1386 
of each other in respect thereto. The contract need not be expressed, but may be implied from the conduct of the parties. Something less than a partnership, a business venture undertaken for profit in which they, by virtue of their agreement, share equally in the right to control each other in the movements of the vehicle."
And, later, in response to a question from the jury, the court stated: "There must be a contract, a common purpose, a community of interest and an equal right to a voice, accompanied by an equal right of control."
The Martinsons do not contend that these instructions, which are based upon Alabama Pattern Jury Instructions: Civil, § 3.14, are erroneous. Rather, they argue that the trial court erroneously refused to give further instructions on whether Mike had the right to control Brad and the automobile.
The first of the refused charges includes an instruction that the jury, in determining whether Mike had the right of control, might consider § 15-10-7 (a)(1), Ala. Code 1975 (1982 Repl.Vol.), which states that "[a] private person may arrest another for any public offense committed in his presence." The Martinsons argue that Mike had the right and duty to stop Brad and arrest him for the commission of any number of the crimes allegedly committed in his presence. They contend that this is dispositive of whether he had the right to control Brad. We disagree. Under the statute, the state has given Mike permission to make an arrest as a private person, but it certainly does not impose a duty upon him to arrest anyone committing an offense in his presence. Starnes v. State,30 Ala. App. 156, 2 So.2d 333 (1941). We find no merit to the argument that because Mike had permission to make an arrest that he also had the right to control Brad and the automobile. The statute does not create any special relationship between Mike and Brad which would give Mike a right of control. Any observer who knew that Brad was driving while intoxicated also had permission to make an arrest, but no one proposes that such person has a right to control, or is in a joint venture with, Brad. The trial court properly refused to give this charge.
The other refused instruction regarding a right to control the automobile stated that Mike did not have to have a driver's license, or know how to drive, in order to be able to exercise control over the driver or the automobile. This instruction is not a statement of law. Whether Mike had a right of control even though he was not a licensed driver is a question of fact to be determined by the jury. The trial court properly refused to give this instruction. A.R.Civ.P., Rule 51.
The Martinsons also contend that the trial court should have charged the jury that, if it found that Mike was either a permissive user or bailee of the car, then he could be held liable for the injuries. Neither of those doctrines would apply to Mike, who was only a passenger in the automobile. Mike did not have the permission and authority of Mr. Cagle, the owner of the vehicle, to use and possess the car. It is clear from the record that there was no delivery of the automobile by Mr. Cagle to Mike, nor a delivery in trust or for a specific purpose. Aerowake Aviation, Inc. v. Winter, 423 So.2d 165 (Ala. 1982). The Martinsons were not entitled to these instructions either.
With regard to the liability of Mr. and Mrs. Cagle, the Martinsons contend that the trial court failed to give the jury a complete definition of "incompetence" in connection with the charge on negligent entrustment. The trial court gave the following charge:
 "Incompetency, as used in this conjunction, is defined as follows: A want of ability suitable to the task, either as regards natural qualities or experience or deficiency of disposition to use one's abilities and experience properly. Incompetency connotes the converse of reliability. The term may include something more than physical and mental attributes, it *Page 1387 
may include want of a qualification generally, such as habitual carelessness, disposition and temperament. For you to find that there was a negligent entrustment to an incompetent, you must find that Mr. Cagle was an incompetent driver. To find that he was an incompetent driver, you take the definition that I have given you of incompetency and apply it to his driving to make that determination."
They do not contend that this instruction is erroneous, only that it is incomplete because it fails to expressly instruct the jury that, in determining whether Brad was an incompetent driver, they may also consider his youth and other pertinent evidence relating to his character, habits, and activities. InKeller v. Kiedinger, 389 So.2d 129 (Ala. 1980), this Court adopted Restatement (Second) of Torts § 390 (1965), as the law in Alabama. Section 390 reads as follows:
"Chattel for Use by Person Known to be Incompetent
 "One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." (Emphasis added.)
This definition does not differ substantially from prior Alabama law as far as the characteristics of an incompetent are concerned. It differs in other respects from pre-Keller Alabama law on the subject of entrustment. However, it does not change significantly the basic definition of who is an incompetent. It was, therefore, not error to fail to give this instruction in addition to, or in place of, the one which was read to the jury.
The judgment appealed from is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.