**Ray J. BYRAM**

v.

**Peter MAIN.**

Supreme Judicial Court of Maine.

Argued March 11, 1987.
Decided April 10, 1987.

William E. MacDonald (orally), Bangor, for plaintiff.

Lewis V. Vafiades, Jeffrey L. Hjelm (orally), Vafiades, Brountas & Kominsky, Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Defendant Peter Main appeals from a judgment entered on August 22, 1986, by the Superior Court (Penobscot County) in the amount of $27,483.52 for plaintiff Ray Byram. After a jury-waived trial the court found Main strictly liable for damages to Byram's tractor-trailer rig caused in the early morning hours of July 22, 1981, when Byram's rig struck Meadow, the pet donkey of Main's daughter, which had escaped from its enclosure and wandered onto Interstate 95 in Orono. The judgment here on review was entered following a second trial in this case, on remand from plaintiff Byram's earlier appeal to this court. On that first appeal we held that the Superior Court had improperly directed a verdict for Main on Byram's negligence claim, because the evidence presented by Byram concerning the adequacy of the fence used to contain the donkey had generated a question for the jury as to Main's negligence. *Byram v. Main*, 474 A.2d 1295 (Me.1984). Before the second trial Byram amended his complaint to add a strict liability count, and by stipulation of the parties the original negligence count was dismissed with prejudice.

The sole issue presented by this second appeal is whether the owner of a domestic animal that has escaped and wandered onto a high-speed public highway is strictly liable for harm resulting from a motor vehicle's collision with that animal. Main urges us that the Superior Court erred in relying upon *Decker v. Gammon*, 44 Me. 322 (1857), as authority for imposing strict liability upon him and that there is no basis in common law for finding strict liability on

the facts of this case. We agree, and therefore vacate the judgment for Byram. In doing so we adopt for application to the present facts the rule of liability set forth in the *Restatement (Second) of Torts* § 518 (1977).

*Decker* defines three classes of cases in which the owners of animals are liable for harm done by them to others:

1. The owner of wild beasts, or beasts that are in their nature vicious, is, *under all circumstances,* liable for injuries done by them....

2. If domestic animals, such as oxen and horses, injure any one, ... *if they are rightfully in the place where they do the mischief,* the owner of such animals is not liable for such injury, unless he knew that they were accustomed to do mischief....

3. The owner of domestic animals, *if they are wrongfully in the place where they do any mischief,* is liable for it, though he had no notice that they had been accustomed to do so before....

*Id.* at 327–29 (emphasis in original). The Superior Court found that the case at bar fell within the third class.

 The Superior Court misinterpreted the *Decker* court's use of the word "wrongfully" when it included in that term the donkey's extremely inappropriate presence on the interstate. Viewing *Decker* against the backdrop of the common law, we read that opinion to say that cases involving trespass by domestic animals are the only cases imposing strict liability encompassed in the third class.[1] Under common law both in 1857 and today, an owner of a domestic animal not known to be abnormally dangerous is strictly liable only for harms caused by that animal while trespassing; if the animal causes harm in a public place, no liability is imposed upon the owner without a finding that the owner

was at fault. *Restatement (Second) of Torts* §§ 504, 509, 518 (1977); W. Keeton, *Prosser and Keeton on Torts* § 76, at 538–42 (5th ed. 1984). The *Decker* court, in defining three classes of cases, set forth the whole common law of animal owner liability so as to fit the particular case before it into that general framework. *See* 44 Me. at 327, 329. The holding of the *Decker* case was limited to its facts. The *Decker* court decided only that strict liability applies in a fact situation that supports a trespass action. The 1857 Law Court specifically noted that:

The gravamen of the charge was, that the horse was wrongfully upon the plaintiff's close....

....

In the case before us, though the declaration is not technically for trespass *quare clausum,* it is distinctly alleged that the defendant's horse, "being so unlawfully at large, broke and entered the plaintiff's close, and injured the plaintiff's horse," which was there peaceably and of right depasturing.

*Id.* at 330. Therefore, *Decker* cannot properly be interpreted to extend by dictum strict liability to harm caused by an animal in a public place. In fact, the *Decker* court specifically noted that "[i]f the owner puts a horse or an ox to grass in his field, and the horse or ox breaks the hedge, and runs into the highway, and gores or kicks some passenger, an action will not lie against the owner unless he had notice that they had done such a thing before." *Id.* at 328–29.[2]

We realize that since 1857 radical changes have occurred in the nature and use of public highways, particularly those with limited access and high-speed motor traffic. Despite those changes, however, we do not read *Decker's* words "wrongfully in the place" to apply to the facts of the case at bar.[3] The general development of

---

1. The *Decker* court also included in its third class the cases in which liability is premised upon the animal owner's turning it loose in the streets of a populous city.

2. Maine cases since *Decker* have also required a finding of negligence prior to imposing liability for harm caused by animals running at large on

the highway. *See Briggs v. Lake Auburn Crystal Ice Co.,* 112 Me. 344, 92 A. 185 (1914); *Dyer v. Mudgett,* 118 Me. 267, 107 A. 831 (1919).

3. We have had no applicable regulation or statute called to our attention that declares a stray domestic animal a trespasser within the right of way of the interstate. Nor do we find any

the law has not been in that direction.[4] In fact *Decker*, when its third class is correctly interpreted to include animal trespass cases but not cases where the animal is in a merely inappropriate place when it causes harm, is still a remarkably good statement of the common law as it remains today, as reflected by the *Restatement.*

■ Furthermore, the considerations that support the strict liability rules in animal trespass and wild animal cases do not apply to the present facts. The liability imposed by courts in cases described by the third *Decker* category and by section 504 of the *Restatement* and the comments following[5] developed as an extension of liability for trespass by persons; the possessor of a domestic animal was identified with the animal, so that when it trespassed the owner trespassed. *Prosser and Keeton on Torts* § 76, at 539. The imposition of strict liability for trespass protects the crucial right of the possessor of land to its exclusive use and control. Strict liability could not serve that same purpose in the case at bar because no individual has the right to the exclusive use and control of a public highway.

The first *Decker* rule, now set forth in *Restatement (Second) of Torts* § 507,[6] im-poses strict liability for the consequences of keeping a wild animal, an activity that, while not wrongful, exposes the community to an obvious abnormal danger.[7] The keeper of a wild animal "takes the risk that at any moment the animal may revert to and exhibit" "the dangerous propensities normal to the class to which it belongs." *Restatement (Second) of Torts* § 507 comment c, at 11–12. Nonetheless, strict liability is not applied to all damages caused by wild animals. Even a wild animal that goes astray and causes damage to a highway traveler in circumstances similar to those of the case at bar would not at common law bring strict liability down upon its keeper.

> [The possessor of a wild animal] is liable for only such harm as the propensities of the animal's class or its known abnormal tendencies make it likely that it will inflict. Thus ... if [a tame] bear, having escaped, goes to sleep in the highway and is run into by a carefully driven motor car on a dark night, the possessor of the bear is not liable for harm to the motorist in the absence of negligence in its custody.

*Id.* comment e, at 12. *See also Scribner v. Kelley*, 38 Barb. 14, 17 (N.Y.1862). The rationale for imposing strict liability upon

---

regulation or statute that makes strictly liable the owner of any domestic animal that strays onto the interstate and causes damage by collision with a motor vehicle. *But see* 7 M.R.S.A. § 3651 (1979) (damage done by a dog).

**4.** We have found no state that in the absence of statute imposes strict liability for harm done by animals that have strayed onto public highways. *See* 29 A.L.R.4th *Collision with Domestic Animals* § 431 (1984). On the basis of statutes, two states have adopted a strict liability rule for harm caused by escaped animals on the highway. *See Dotson v. Matthews*, 480 So.2d 860 (La.App.1985); *Auto Owners Ins. Co. v. Austin*, 147 Mich.App. 28, 383 N.W.2d 88 (1985).

**5.** *Restatement (Second) of Torts* § 504 (1977) provides in pertinent part:

(1) ... [A] possessor of livestock intruding upon the land of another is subject to liability for the intrusion although he has exercised the utmost care to prevent them from intruding.

(2) The liability stated in Subsection (1) extends to any harm to the land or to its possessor or a member of his household, or their chattels, which might reasonably be expected to result from the intrusion of livestock.

"Livestock" is defined in comment (b) thereto as "those kinds of domestic animals and fowls normally susceptible of confinement within boundaries without seriously impairing their utility and the intrusion of which upon the land of others normally causes harm to the land or to crops thereon."

**6.** *Restatement (Second) of Torts* § 507 (1977) provides:

(1) A possessor of a wild animal is subject to liability to another for harm done by the animal to the other, his person, land or chattels, although the possessor has exercised the utmost care to confine the animal, or otherwise prevent it from doing harm.

(2) This liability is limited to harm that results from a dangerous propensity that is characteristic of wild animals of the particular class, or of which the possessor knows or has reason to know.

**7.** The keeping of wild animals is categorized with such dangerous activities as blasting, pile driving, storing inflammable liquids, and accumulating sewage. *Prosser and Keeton on Torts* § 76, at 541, § 78, at 547.

the owners of wild animals thus does not support applying anything beyond a negligence rule on the facts presented to us here.

For the purposes of this decision, therefore, we adopt the approach of *Restatement (Second) of Torts* § 518, which is supported by the case law in Maine and elsewhere:

> Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done ... if, but only if,
>
> (a) he intentionally causes the animal to do the harm, or
>
> (b) he is negligent in failing to prevent the harm.

We, as does the *Restatement*, leave the highway traveler who is injured by colliding with a stray domestic animal solely to his remedy in negligence. The degree of care required of the animal owner is of course commensurate with the propensities of the particular domestic animal and with the location, including proximity to high-speed highways, of the place where the animal is kept by its owner. *Id.* comments f and k. Whether the owners of large domestic pets should be required to bear more stringent responsibilities for those animals than are imposed by the common law is a question the public policy makers of the other branches of state government may well wish to address.

The entry is:

Judgment vacated. Remanded with directions to enter judgment for defendant.

All concurring.