376 S.E.2d 321

**Ethel M. DAWSON, et al., Plaintiffs Below, Appellants,**

v.

**Charles WOODSON, Defendant Below, Appellee.**

No. 17969.

Supreme Court of Appeals of West Virginia.

Dec. 15, 1988.

---

Lawrence M. Schultz, Askin, Pill, Scales & Burke, Martinsburg, for appellants.

Peter L. Chakmakian, Charles Town, for appellee.

BROTHERTON, Justice:

The plaintiff, Ethel M. Dawson, appeals from an order entered by Jefferson County Circuit Court Judge Thomas W. Steptoe, Jr. on January 5, 1987, granting a motion for partial summary judgment filed by defendant Charles Woodson, the owner of a horse that collided with Dawson's car on December 21, 1980. As a result of the partial summary judgment order, the trial court dismissed that portion of Dawson's complaint which alleged that Woodson was liable for personal injuries suffered in the collision. The only issue now before this Court is whether the trial court erred in holding that, absent a specific showing of negligent acts or omissions by the defendant owner of the horse, the plaintiff could not recover for personal injuries sustained as a result of the presence of the horse on a public highway in West Virginia.

Shortly after five o'clock on the evening of December 21, 1980, Ethel M. Dawson was driving a 1974 Ford Pinto in an easterly direction along State Route 51 in Jefferson County, West Virginia. Dawson was driving with her headlights on in the evening darkness. Her twelve-year-old grandson, Eric Dawson, was a passenger in the car.

At the same time, Charles Woodson was in pursuit of his thoroughbred racing stallion, Sentry, who had just escaped from Woodson's pasture by jumping over the fence that enclosed the area. Although Woodson was whistling and calling for him to return, Sentry ran approximately one-half mile along a private road to State Route 51, where he began trotting west in the eastbound lane.

At approximately 5:20 p.m., Woodson's horse collided with Dawson's Pinto. Dawson's car then struck a car in the westbound lane, veered off of State Route 51, went through a fence, and stopped after hitting a tree some one hundred yards from the highway. Dawson testified that she did not know she had struck a horse until after she awoke in the hospital and was told about what had happened. Both Dawson and her grandson were injured in the collision and Sentry was killed.

On July 2, 1982, Ethel Dawson and her husband, Paul, along with their daughter, Barbara, individually and as next friend of Eric Dawson, filed a civil action in the Circuit Court of Jefferson County, alleging that Woodson had unlawfully and negligently permitted Sentry to run at large on State Route 51 in Jefferson County. Woodson filed an answer, asking for dismissal of the entire action or, in the alternative, dismissal of those portions of the complaint pertaining to personal injuries, on grounds that Dawson failed to state a cause of action against Woodson upon which she could recover for personal injuries. Woodson also filed a counterclaim against Dawson in the amount of $452,000.00 for the destruction of Sentry.

The discovery process continued for several years. On July 8, 1985, the circuit court granted Woodson's motion for partial summary judgment. However, the Dawsons were permitted to file an amended complaint, to which they added new averments of negligence by Woodson. Woodson filed a second motion for partial summary judgment on December 8, 1986. The Dawsons, by counsel, and Woodson, in person and by counsel, appeared before Judge Steptoe to argue the motion on January 5, 1987.

At this hearing, the Dawsons stipulated that they would not produce evidence at trial of specific negligent acts or omissions by Woodson that caused Woodson's horse to escape onto the highway. Woodson argued that without evidence at trial of specific negligent acts or omissions by Woodson, this Court's holding in *Smith v. Whitlock*, 124 W.Va. 224, 19 S.E.2d 617 (1942)

would preclude the plaintiff's claim for personal injuries. Judge Steptoe agreed and granted the defendant's motion, thereby dismissing the portion of Dawson's complaint dealing with personal injuries.

The Dawsons now appeal from the final order of the Circuit Court of Jefferson County and argue that the grant of partial summary judgment was improper because genuine issues of material fact remain to be resolved between the parties.

### I.

Facts somewhat similar to those now before us are found in the aforementioned case of *Smith v. Whitlock*, 124 W.Va. 224, 19 S.E.2d 617 (1942). After a horse ran into a car on a public highway, a passenger in the car filed a civil suit against the owner of the horse, alleging the owner was negligent in allowing the horse to run at large on the highway. The lower court sustained the defendant's demurrer and the following questions raised by the demurrer were certified to this Court: (1) whether any statute of this state makes the owner of a horse allowed to run at large on a public highway liable for personal injuries to the person of another resulting therefrom, and (2) whether there is, in this state, any such liability independent of statute? *Id.* 124 W.Va. at 226–27, 19 S.E.2d at 618.

After examining the applicable West Virginia Code provisions, §§ 19–18–2 and 19–18–5,[1] this Court concluded that the statutes provide civil and criminal liability only for the injury and damage that animals may inflict upon property, but impose no civil liability for injury to people. Noting that "[n]o reason is suggested for the pecu-

liarly narrow liability thus created," the Court explained that, given the fact that legislatures since 1917 had not enacted a provision for civil liability to injured persons, "[w]e may thus recognize a fairly consistent purpose of the succeeding legislatures to create a new, non-common law liability only so far as the statute expressly goes, and no more." *Id.* 124 W.Va. at 228, 19 S.E.2d at 618, 619.

The Court then discussed whether either the common law or a non-statutory rule would create liability for a defendant whose animal had caused personal injury. Although the English common law required that owners of domestic animals keep them confined, the law was not adopted in the United States because, given the untamed wilderness that characterized this country at the time, such legal restraints were unnecessary. However, as this Court noted, conditions have obviously changed.

What was safe in the beginning, later tended to become dangerous; what was once due care, might, under changed conditions, subsequently take on the character of gross negligence.... Today, the owner's permitting a horse to wander on a highway may or may not be actionable negligence, depending on the character of the highway and its traffic.... [W]hat would be dangerous on one road, may be perfectly safe on another; what would be legal negligence in one case, might be no evidence of want of care in another.... Each case must stand on its own facts. The character of the road, the kind of traffic thereon, the time of day, and all other pertinent facts and the surrounding conditions, must be considered.

1. West Virginia Code § 19–18–2 (1988) states:
   It shall be unlawful for the owner or manager of any horse, mule, ass, jennet, cattle, sheep, goat or hog, to negligently permit it to run at large on any public road or highway or railroad right-of-way, and should any such stock, while so negligently allowed to run at large, injure or destroy the property of another while so running at large, the owner or manager thereof shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than five dollars nor more than ten dollars.
   West Virginia Code § 19–18–5 (1988) states:
   Should any stock, while running at large contrary to the provisions of sections one, two,

three or four [§§ 19–18–1, 19–18–2, 19–18–3 or 19–18–4] of this article, injure or destroy the property of another, the owner or manager of any such stock shall, notwithstanding any penalty imposed by said sections, be liable to the party whose property shall have been injured or destroyed for the amount of damage sustained by him by reason of such injury or destruction. And the party so injured may, if he find such stock on his premises, impound them, or a sufficient number thereof, subject to the provisions of sections eight, nine and ten [§§ 19–18–8 to 19–18–10] of this article, until such damages and costs of keeping be paid.

*Id.* 124 W.Va. at 229, 19 S.E.2d at 619. The Court concluded that, in a given situation, there may be civil liability for personal injuries even in the absence of an applicable statute. In such a case, the horse owner's liability would arise:

> ... not because the injury occurs on a highway, nor by reason of any statute, nor from the fact that it was inflicted by his horse, but from the very right of persons, wherever they lawfully are, to be free from careless, or purposeful injury by another—from the fundamental law, not necessary to be written, but inherent in any conception of justice, that the owner of property shall not intentionally, or negligently, so use it, or permit it to be used, as to injure another.

*Id.* 124 W.Va. at 230, 19 S.E.2d at 619–20. Thus, we recognized that animal owners have a fundamental duty to exercise ordinary care in order to prevent their animals from causing injury to others.[2]

In *Smith*, the Court ruled that the plaintiff's case should be dismissed unless the pleadings were amended. The pleadings were found to be insufficient because there was no description of the highway on which the collision occurred or the traffic conditions and surroundings and no description of the defendant's alleged negligence. "The facts pleaded must show the defendant should have anticipated that his acts or omissions might reasonably have been expected to result in injury to persons on the highway." *Smith*, 124 W.Va. at 232, 19 S.E.2d at 620–21.

In the case now before us, when Judge Steptoe granted the defendant Woodson's motion for partial summary judgment, he stated "the court ... determines that *Smith v. Whitlock* requires the plaintiffs to prove by a preponderance of the evidence specific negligent acts or omissions of the defendant that caused defendant's horse to escape on the highway to sustain their claim for personal injuries." The Dawsons stipulated that they would not produce evidence at trial of specific negligent acts or omissions by Woodson. However, we do not believe that the grant of partial summary judgment should necessarily have followed from this stipulation. Instead, we believe the Dawsons' pleadings sufficiently allege, as *Smith* requires, that Woodson "should have anticipated that his acts or omissions might reasonably have been expected to result in injury to persons on the highway." *Id.*[3]

## II.

Rule 56(c) of the West Virginia Rules of Civil Procedure provides, in part, that the

---

**2.** To elaborate on this point the Court cited a case in which the Ohio Supreme Court stated:
> A statute is not always required to establish the duty of ordinary care.... Apart from specific statute the law imposes upon every person the duty of using his own property so as not to injure his neighbor. As conditions change and modes of life alter, the duty to observe ordinary care in the use of one's own property, while not altering in its essentials, will alter in its details. What ordinary care demands depends always upon the circumstances of the case, and a primary factor among those circumstances is the fact whether the injury could or could not have reasonably been anticipated from the acts done or left undone by the defendant. When the state was established it was not in general unsafe to permit domestic animals to run at large in the highway outside of the confines of municipalities, and damage from so doing could not generally be reasonably anticipated. With the growth of traffic, particularly automobile traffic, the situation is changed, but the duty to observe ordinary care remains the same. This duty in modern times requires that the owner of livestock exercise ordinary care not to let his livestock stray out onto a much-traveled highway, because under our modern traffic conditions he can reasonably anticipate that, if the livestock stray onto such a highway, they are apt to damage persons or property.

*Smith*, 124 W.Va. at 231–32, 19 S.E.2d at 620 (quoting *Drew v. Gross*, 112 Ohio St. 485, 491, 147 N.E. 757, 758 (1925)).

**3.** In the plaintiff's Response to Defendant's Motion for Summary Judgment, the Dawsons' attorney stated, "Plaintiffs admit they are unable to prove any acts or omissions of negligence by the Defendant, however, that is not necessary for the Plaintiffs to succeed in their claim for personal injuries." On appeal the Dawsons' attorney admits that such a statement may have been "premature," but argues that "Plaintiffs are certainly entitled to rely upon the testimony of Mr. Woodson as well as the other witnesses whose depositions are included in the record to argue for an inference of negligence." We agree with the Dawsons' argument on this point. Certainly, how Mr. Woodson restrained Sentry may be central to the determination of whether he failed to exercise ordinary care in this situation.

summary "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ On the issue of when it is proper to grant a summary judgment motion, this Court has stated:

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

Syl. pt. 3, *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Furthermore, we have found that:

Even if the trial judge is of the opinion to direct a verdict, he should nevertheless ordinarily hear evidence and, upon a trial, direct a verdict rather than try the case in advance on a motion for summary judgment."

Syl. pt. 1, *Masinter v. Webco Co.*, 164 W.Va. 241, 262 S.E.2d 433 (1980).

■ It is the opinion of this Court that the Dawsons raised several genuine issues

of material fact in their amended complaint[4] and, therefore, Judge Steptoe erred in granting Woodson's motion for partial summary judgment. For example, the Dawsons alleged that a negligent act by Woodson was his failure to maintain a fence that would have prevented Sentry from running at large on State Route 51. Although Woodson argues that he complied with the requirements of the West Virginia Code insofar as it prescribes a lawful minimum fence height,[5] an issue is raised as to whether this particular fence was sufficient to prevent this particular horse from escaping and, ultimately, causing both personal injury and property damage.[6]

The Dawsons also included a description of State Route 51 and its traffic conditions in their amended complaint. Woodson disputes the Dawsons' claim that State Route 51 is a heavily-traveled, major highway, thus making an issue of the actual character of this highway.

It is clear to this Court that the Dawsons' pleadings do not suffer from the same insufficiencies that plagued the plaintiffs' petition in *Smith v. Whitlock*.[7] In syllabus point 5 of *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964), we stated that:

Questions of negligence, due care, proximate cause and concurrent negligence

---

4. The Dawsons included the following allegations in the amended complaint filed on July 17, 1985:

6. That the Defendant negligently failed to maintain a fence that prevented "Sentry" from running at large on State Route 51.

7. That the Defendant should have anticipated that the fence, if any, on his property would not prevent "Sentry" from running at large on State Route 51, a heavily traveled two-lane undivided asphalt highway connecting, Inwood, Berkeley County, West Virginia, with Charles Town, Jefferson County, West Virginia.

8. That the Defendant negligently failed to anticipate that "Sentry's" running at large on State Route 51 would result in injury to persons on the highway.

5. *See* W.Va.Code § 19–17–1 (1988).

6. *See, e.g.*, *Byram v. Main*, 474 A.2d 1295 (Me. 1984), in which a pet donkey escaped from its

enclosure at night and was killed when struck by a truck on a nearby interstate. The court stated that while the issue presented at trial was whether the owner exercised reasonable care to contain the donkey, evidence of any tendency of the donkey to escape may bear on the reasonableness of the owner's precautions to prevent escape. Likewise, "evidence presented by [the truck driver] concerning the size and structure of the fence and the size of the donkey may be weighed against [the owner's] evidence of the donkey's lack of wanderlust. However, such considerations are for the jury." *Id.* at 1296.

7. The West Virginia Rules of Civil Procedure were adopted by this Court on October 13, 1959, more than seventeen years after our decision in *Smith v. Whitlock*. Our conclusion that the Dawsons' pleadings were sufficient is also supported by Rule 9(b), which states that while the circumstances constituting fraud or mistake shall be pleaded with particularity, negligence may be averred generally.

present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them.

The Dawsons' amended complaint raises issues such as these which they should be permitted to argue to a jury.

 The West Virginia Code does not provide damages for personal injuries sustained as a result of violations of §§ 19–18–2, 19–18–3, or 19–18–4 (1988).[8] However, an injured party may maintain a claim for damages if that party establishes that the animal owner failed to exercise the ordinary care that was necessary to prevent injury to others. Whether ordinary care was exercised in a given situation is a determination which should be made by the trier of fact after evaluating all of the evidence presented by the parties at trial.

For the reasons stated above, we reverse the order of the Circuit Court of Jefferson County granting the defendant Woodson's motion for partial summary judgment and remand this case to that court for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

8. *See* W.Va.Code § 19–18–5 (1988), at footnote    one, *supra.*