622 So.2d 902 (1993)
Gwendola Winters LOLLAR and Jon Lollar
v.
Eddie E. POE and Sheila Poe.
1911962.
Supreme Court of Alabama.
June 18, 1993.
*903 George A. Nassaney, Jr., Tuscaloosa, for appellants.
Clark Summerford and Beverly A. Smith of Zeanah, Hust, Summerford & Davis, Tuscaloosa, for appellees.
HORNSBY, Chief Justice.
Gwendola Winters Lollar was injured when her motor vehicle collided with a horse on a state highway in Tuscaloosa County, at 9:45 p.m. on June 13, 1990. Lollar and her son, Jon Lollar, the owner of the vehicle, sued the owners of the horse, Eddie E. Poe and Sheila Poe, alleging that the Poes had negligently, willfully, and wantonly allowed the animal to run at large upon the highway and had thereby caused the collision that resulted in Ms. Lollar's injuries. The trial court initially entered a summary judgment for the Poes, but later set aside that judgment. After a second hearing on the defendant's summary judgment motion, the court again entered a summary judgment for the Poes. The Lollars appeal.
The Lollars argue that they presented substantial evidence creating a genuine issue of material fact as to whether the Poes negligently permitted their horse to run at large on the state highway. In response to the Poes' motion for summary judgment, the Lollars presented an affidavit by a neighbor of the Poes, who stated that she had seen some of the Poes' horses out of the pasture on two prior occasions when the horses had wandered over to neighboring yards, including her own. On one of the occasions, the neighbor said she telephoned the Poes' daughter to have her retrieve a horse that had wandered into her yard and then watched her lead the animal back to the Poes' pasture. The Lollars argue that this evidence is sufficient to withstand a summary judgment motion.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), A.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990).
Generally speaking, the owner of an animal would not be liable for damages caused by a collision with a motor vehicle, unless the owner "knowingly or willfully put or placed" the animal on the public highway, road, or street where the injury occurred. Ala.Code 1975, § 3-5-3(a). In light of the manifest danger to travelers of permitting domestic animals to roam at will on the highways, many jurisdictions have adopted *904 statutes or ordinances prohibiting their owners from allowing such animals to roam unattended. Annot., Liability of Owner of Animal for Damage to Motor Vehicle or Injury to Persons Riding Therein Resulting from Collision with Domestic Animal at Large in Street or Highway, 29 A.L.R.4th 431 (1984 & Supp. 1992). See also Kenney v. Antonetti, 211 Cal. 336, 295 P. 341 (1931) (acknowledging the policy reasons for such legislation, holding that "in these days of rapid automobile transportation, the extreme hazard to drivers and passengers of animals straying unattended on roads, particularly at night, cannot be overestimated," and stating, "In such situations, the driver is placed in a nearly helpless position because an animal springs out of the darkness in front of a car when blinded or hypnotized by its headlights.").
Ala.Code 1975, § 3-5-14(a), allows municipalities to regulate livestock. The City of Tuscaloosa has enacted an ordinance providing as follows:
"(a) it shall be unlawful for any person having charge, custody or control of any livestock, rabbit or fowl to permit such animal or fowl to run at large, or to fail to prevent such animal or fowl from running at large, in the city or in that area of the police jurisdiction extending within one thousand (1,000) feet of its corporate limits."
Code of the City of Tuscaloosa, Alabama 1983, § 4-20(a). This Court has held that a municipality may regulate livestock to the limit of its police jurisdiction. Wilkins v. Johnson, 595 So.2d 466 (Ala.1992). The parties admit that the accident occurred within the police jurisdiction of the City of Tuscaloosa and that § 4-20(a) applies to this case.
The Tuscaloosa ordinance imposes a duty, the breach of which is punishable by a criminal penalty, on those "having charge, custody or control" of livestock within the police jurisdiction of the City of Tuscaloosa to prevent their livestock from running at large. It authorizes the City of Tuscaloosa to charge those "having charge, custody or control" of livestock who permit or fail to prevent their livestock from running at large with violating § 4-20(a), and to impound the livestock and impose a monetary fine. Although the City of Tuscaloosa has not brought criminal charges against the Poes, this is not a bar to the Lollars' claim against the Poes for civil liability. This Court recently reaffirmed the general rule that for every criminal violation that injures the person or property of another, there is a concomitant civil remedy. See Smitherman v. McCafferty, 622 So.2d 322 (Ala.1993). In Smitherman, this Court reiterated the basis for such a civil remedy:
"`Even though an act may constitute a crime, if it also results in injury to the person or property of another, the act may still be the basis of a civil action for damages. However, civil liability will ensue only if the acts complained of violate a legal right of the plaintiff, constitute a breach of duty owed to the plaintiff, or constitute some cause of action for which relief may be granted.'"
622 So.2d at 325 (quoting Martinson v. Cagle, 454 So.2d 1383, 1385 (Ala.1984)).
Applying this rule, we note that § 4-20(a) imposes a duty on those "having charge, custody or control of any livestock, rabbit or fowl" to take reasonable steps to prevent their animal from running at large within the police jurisdiction of the City of Tuscaloosa. The Lollars sought to impose civil liability against the Poes, alleging that they had negligently failed to prevent their horse from running at large, in violation of § 4-20(a), and that their negligence had caused the Lollars' injuries or loss. Accordingly, under the rule set out in Martinson and Smitherman, the Lollars may proceed against the Poes on a theory of negligence.
This Court has previously held, in an action against the owner of a bull, that the owner "must have been shown to be negligent in transporting his bull, or negligent in permitting him to escape" for the party injured by the bull to recover. Clark v. Moore, 341 So.2d 116, 118 (Ala.1976) (construing a statute making it unlawful for an owner of livestock "to knowingly, voluntarily, *905 negligently, or wilfully permit ... livestock ... to go at large ... either upon the premises of another or upon ... streets in ... Alabama"). A majority of other courts have also construed legislation making it unlawful to "permit," "allow," or knowingly or willfully put or place the animals at large on the highway, to require proof that, at a minimum, the owner was negligent with respect to the care and custody of his domestic animal in an action against the owner for damage to a motor vehicle or an injury to a person riding therein resulting from a collision between the animal at large in the street or highway and the vehicle. Bilderback v. United States, 558 F.Supp. 903 (D.Or.1982) (applying federal and Oregon law, recognizing rule requiring proof of negligence); Cosby v. Oliver, 265 Ark. 156, 577 S.W.2d 399 (1979); Carrow Co. v. Lusby, 167 Ariz. 18, 804 P.2d 747 (1990); Hammerlund v. Troiano, 146 Conn. 470, 152 A.2d 314 (1959); Selby v. Bullock, 287 So.2d 18 (Fla.1973) (recognizing rule); Porier v. Spivey, 97 Ga.App. 209, 102 S.E.2d 706 (1958); Abadie v. Royer, 215 Ill.App.3d 444, 158 Ill.Dec. 913, 574 N.E.2d 1306 (1991); Cooper v. Eberly, 211 Kan. 657, 508 P.2d 943 (1973); Sparks v. Doe, 379 S.W.2d 252 (Ky.1964); Liner v. McEnery, 176 So.2d 786 (La.App. 1965); Peterson v. Pawelk, 263 N.W.2d 634 (Minn.1978); Hughes v. W & S Constr. Co., 196 So.2d 339 (Miss.1967) (recognizing rule); Beshore v. Gretzinger, 641 S.W.2d 858 (Mo.App.1982); Ambrogini v. Todd, 197 Mont. 111, 642 P.2d 1013 (1982); Jensen v. Nielson, 91 Nev. 412, 537 P.2d 321 (1975); Mitchell v. Ridgway, 77 N.M. 249, 421 P.2d 778 (1966); Kelly v. Willis, 238 N.C. 637, 78 S.E.2d 711 (1953); Burnett v. Rice, 39 Ohio St.3d 44, 529 N.E.2d 203 (1988); Kathren v. Olenik, 46 Or.App. 713, 613 P.2d 69, 75 (1980); Watzig v. Tobin, 292 Or. 645, 642 P.2d 651 (1982); Reed v. Clark, 277 S.C. 310, 286 S.E.2d 384 (1982); Higgins v. Vinson, 549 S.W.2d 161 (Tenn. App.1976); Beck v. Sheppard, 566 S.W.2d 569 (Tex. 1978); Rhiness v. Dansie, 24 Utah 2d 375, 472 P.2d 428 (1970); Rice v. Turner, 191 Va. 601, 62 S.E.2d 24 (1950); Dawson v. Woodson, 180 W.Va. 307, 376 S.E.2d 321 (1988); Hinkle v. Siltamaki, 361 P.2d 37 (Wyo.1961).
The rules regarding negligence in such situations are the same as in ordinary negligence cases. See Gardner v. Black, 217 N.C. 573, 9 S.E.2d 10, 11 (1940). To recover on the basis of negligence, the Lollars must establish that the defendants owed a duty of care to them, that the defendants breached that duty, that the Lollars suffered loss or injury, and that the defendants' negligence was the actual and proximate cause of that loss or injury. John R. Cowley & Bros., Inc. v. Brown, 569 So.2d 375 (Ala. 1990).
The prohibitions of § 4-20(a) impose a duty on persons "having charge, custody or control of any livestock, rabbit or fowl" to take reasonable steps to prevent their animals from running at large. The degree of care required of an animal owner should be commensurate with the propensities of the particular animal and with the place where the animals are kept, including its proximity to high-speed highways. Wilkins v. Johnson, 595 So.2d 466, 468 (Ala.1992) (holding that those "who own livestock within populous areas near municipalities should be held to a higher standard of care in preventing that livestock from endangering other citizens"); Byram v. Main, 523 A.2d 1387 (Me.1987). The Poes recognize that they owe a duty to take reasonable steps to prevent their animals from running at large; however, they argue that they did not breach this duty. The Poes do not dispute that the Lollars sustained loss or injury as a result of Ms. Lollar's collision with their horse on the state highway.
The Lollars' evidence that the Poes knew that one of their horses had gotten out of the pasture on prior occasions creates a genuine issue of material fact as to whether the Poes had negligently failed to take reasonable steps to prevent the horse from escaping and running at large. A review of cases from other jurisdictions supports this holding. See Oliver v. Jones, 239 Ark. 572, 393 S.W.2d 248 (1965) (holding that the plaintiff, who sustained damages when his automobile collided with a calf owned by the defendant, presented *906 sufficient evidence that the owner was negligent in allowing a calf to be on highway to take the case to the jury on the issue of negligence, where the plaintiff presented evidence that others, on earlier occasions, had seen the owner's cattle on the highway at or near the place of the mishap); Woolstrum v. Mailloux, 141 Cal.App.3d Supp. 1, 190 Cal.Rptr. 729 (App.Dep't Super.Ct.1983) (holding that the plaintiffs' evidence that the rancher's cows had escaped several times over the past 10 years constituted sufficient evidence for jury to properly find simple negligence and to award compensatory damages where the plaintiffs sustained damages when their car collided with a cow owned by the defendant); Jackson v. Hardy, 70 Cal.App.2d 6, 160 P.2d 161 (1945) (evidence that defendants' cattle had been driven to a point near highway and left there unattended for two days, although defendants had been warned that they might stray, was sufficient to sustain a finding of negligence, on appeal from a judgment in favor of a motorist who collided with bull belonging to the defendants); Prevatt v. Carter, 315 So.2d 503 (Fla.Dist.Ct.App.1975) (reversing a judgment based on a directed verdict in favor of cow owner and holding that the motorist presented sufficient evidence of the cow owner's prior knowledge that his cows were getting out of his pasture for the jury to infer his negligence, thus placing on him the burden of coming forward with an appropriate explanation for how the cows escaped despite his alleged use of ordinary care); Quarles v. Tolar, 312 So.2d 350 (La.App. 1975) (evidence that cows had escaped from the owner's pasture on a few prior occasions and evidence that the gate had been left open and fences damaged by trespassers on previous occasions, but no evidence that such had occurred on the date of the accident, was sufficient to reverse a summary judgment in favor of the owner); Garrett v. Overman, 103 N.C.App. 259, 404 S.E.2d 882, review denied, 329 N.C. 787, 408 S.E.2d 519 (1991) (appellate court reversed a judgment based on a directed verdict for animal owners in an action by a motorist based on injuries sustained when the owners' horse escaped and collided with her car, holding that there was a jury question as to whether the defendants should have reasonably foreseen that the horse would escape from the pasture and likely cause harm to a traveler where the plaintiff presented evidence that the defendants knew that their horses had run through their fences in the past); Eixenberger v. Belle Fourche Livestock Exchange, 75 S.D. 1, 58 N.W.2d 235 (1953) (reversing a j.n.o.v. in favor of the owner of horses and directing the entry of a judgment for a motorist in his action to recover damages for injuries received as a result of a collision between his automobile and two horses belonging to the defendant where the motorist presented evidence that the owners' horses had been at large on the highway on numerous occasions previous to the collision); Higgins v. Vinson, 549 S.W.2d 161 (Tenn.App.1976) (where the plaintiff presented evidence that the defendants' horse had been seen out on the road prior to the night it collided with the plaintiff's motor vehicle, the court set aside a directed verdict for the animal owner, holding that there was evidence from which a jury might reasonably conclude that the defendants' horses, and particularly the horse involved in the accident in question, had been out of the defendants' pasture and onto the highway on a number of occasions prior to this accident, that the defendants knew or should have known this fact, and, therefore, that the defendants could have been found negligent in not preventing this horse from going out onto the highway and, thereby, becoming a hazard to motorists, particularly at night).
Accordingly, we reverse the judgment of the trial court and remand this case.
REVERSED AND REMANDED.
SHORES, KENNEDY and INGRAM, JJ., concur.
ADAMS, J., concurs in the result.
MADDOX and STEAGALL, JJ., dissent.
STEAGALL, Justice (dissenting).
I would hold that the Lollars did not present substantial evidence of negligence.
*907 Eddie Poe presented his own affidavit, wherein he stated that he kept the horse in a pasture enclosed by a fence that he kept in good repair and that he had no idea how the horse had escaped the pasture on the day of the accident. He further stated that, immediately following the accident, he inspected the fence and found that both gates were closed and secured and that there were no breaks in the fence.
The Lollars presented no substantial evidence to rebut the Poes' prima facie showing that on the day of the accident the pasture fences and gates were locked and in good repair and that the Poes had taken all reasonable precautions to prevent their animals from breaking out of the pasture. In view of this, I would affirm the summary judgment for the Poes.
MADDOX, J., concurs.