Gerald COSBY and Sue COSBY
*v.* Dwight OLIVER

78-209                                          577 S.W. 2d 399

Opinion delivered February 26, 1979

*R. H. Mills,* for appellants.

*No brief* for appellee.

CONLEY BYRD, Justice. Appellee Dwight Oliver sued appellants Mr. & Mrs. Gerald Cosby to recover damages to his Ford pickup that occurred as a result of the alleged negligence of appellants in permitting their horses to run loose on the highway. The Trial Court sitting as a jury in rendering judgment against appellants made the following findings:

> "In a civil case it is my duty to determine which way the evidence is balanced. I have no serious doubt in my mind that the horses involved were horses belonging to the defendants. There is no testimony that the horses had been out before, either with or without the knowledge of defendants. It is a question of whether the maintenance of the place in which the horses were kept was reasonable. The fences came to one end of the barn and the barn itself constituted part of the fence, and there was a walk through which was closed with this sign that had been propped up there and wired. When Mr. Oliver and Mr. Barnett got there the fence was down and it was not wired. The testimony was otherwise that it was wired up whenever Mr. Cosby saw it and whenever Mr. Cranston saw it. With sixteen (16) horses out there, I don't believe that that kind of a jury

rig is reasonable means of keeping horses in. This is a sort of jury rig thing and I just don't think it is adequate."

Appellee testified that he had a collision with his Ford pickup in the early morning hours about a mile and a half south of Cave Springs on Highway 112 on November 12, 1976. He saw something in the road and hit his brake but didn't stop. He just slowed down and blew his horn. He started to pull around it hoping it would go across the road on the right hand side. He didn't know that there were some more of them coming across the road and he did not see what he hit. When he opened his door to get out, he could hear horses running. The only one he saw was a white horse. Later he and Travis Barnett started looking for horses. They found the appellants' horses more than a mile and a half away from the scene of the collision up by a barn. They drove the horses back into the barn and wired up a metal sign that was lying on the ground. He assumed the metal sign was used for a gate. Because there was a white horse present and they found a brown horse limping, he assumed that the limping horse was the one he hit. When he talked to Mrs. Cosby she said somebody stole some hay out there and that's how come the fence was down.

Travis Barnett, City Marshal at Cave Springs, testified that "the horses were already at the barn when we got there and we just drove them back to the barn. There was a sign in the doorway to the barn that was laying down on the ground that had apparently been used as a gate." It had been wired at each end. Travis Barnett testified that he had never raised horses but he had raised cattle and tried to keep them fenced in. The fences which he had when he farmed were about like the gate the appellants had there. It was a make-shift gate such as he had devised many times in his own business. A make-shift gate like most people with livestock make or put together and use.

Rex Cranston, the owner of the farm, testified that he had rented the pasture but he used the barn for hay storage. The sign was not supposed to be used as a gate, it was just part of the fence line. The sign was fixed and was like part of

the fence line since it was tacked down. The only way you could utilize the sign as a gate was to unwire it. He was out there once or twice a month and the sign had been up and okay. Prior to leasing the pasture there were about 50 head of cattle out there and the sign was always up. To get into the pasture you had to use another gate.

Appellant Gerald Cosby testified that he had looked at the fence line before he rented it and felt it was sufficient to hold horses. He got into the pasture through a wire gate east of the barn. He checked the fences and gates every day and at no time did he find the fences or gates inadequate to hold horses. He had checked the fences and gates on Thursday prior to the accident on Friday. To his knowledge no horse ever got out of the pasture outside of the one incident appellee told him about. So far as he was concerned he had no injured horses and didn't lose any sales on account of an injured horse.

As can be seen from the foregoing resume, the proof that appellee struck appellants' horse is somewhat speculative. Yet, if we should assume that it was appellants' horse that appellee struck, there still is no proof that appellants were negligent in permitting their horses to run at large. Ark. Stat. Ann. § 41-2919 (Repl. 1977) provides:

> "A person commits the offense of permitting livestock to run at large if, . . . he knowingly permits such livestock to run at large."

In the construction of similar statutes in *Favre* v. *Medlock,* 212 Ark. 911, 208 S.W. 2d 439 (1948), we pointed out that it is the intentional or negligent permission of the owner for his animal to run at large which subjects him to the civil and penal consequences prescribed by the statute. We there held that the fact that an animal is at large is not prima facie negligence on the part of the owner. See also *Poole* v. *Gillison,* 15 FRD 194 (E. D. Ark. 1953).

We have been unable to find any proof in the record to show that appellants were negligent in maintaining the inclosures where the horses were kept. Neither have we found

any proof in the record to support the trial court's suggestion that the sign was only propped up. It follows that the trial court erred in refusing to direct a verdict for appellants.

Reversed and dismissed.

HARRIS, C.J., and GEORGE ROSE SMITH, J., dissent.

GEORGE ROSE SMITH, Justice, dissenting. I am unable to understand the majority's reversal of this judgment for the plaintiff. There was an abundance of substantial evidence to support the findings of the circuit court, sitting as a jury.

The majority first imply that the proof that the appellee struck the appellants' horse is "somewhat speculative." I really don't see how any other conclusion could have been reached by the trial judge. We have had a state-wide stock law for 30 years. It is common knowledge that a stray horse is hardly ever seen on a public road any more, much less a herd of six or seven horses. But that is what the appellee encountered. He found a trail of fresh droppings on the road that led to the appellants' place, where at least that many horses were free from confinement. The herd included a white horse and an injured horse, both of which corresponded to the appellee's account of the accident. How this proof can be called "somewhat speculative" is hard to understand.

The second issue is whether there is proof that the appellants were negligent in confining the horses. The front side of their large barn formed a continuation of the fence around their horse lot. A photograph in the record shows the wide front entrance into the barn, for which no doors were provided. Instead, the appellants used a large tin beer sign which, as shown by the photograph, was not quite as wide as the opening it was used to obstruct. When the appellee and the marshal arrived, the piece of tin was down. The appellee testified positively that there was nothing on the sign to hold it up. The trial judge stated specifically that the sign was down "and it was not wired." It is really beyond question that the herd of horses actually got out onto the highway. I am at a loss to understand how it can be said, in view of the

photograph and the testimony, that there is no substantial testimony to support a finding of negligence.

HARRIS, C.J., joins in this dissent.