Peter VAN HOUTEN v. Rick PRITCHARD

93-473                                    870 S.W.2d 377

Supreme Court of Arkansas
Opinion delivered February 7, 1994
[Rehearing denied March 14, 1994*]

*Glaze and Corbin, JJ., not participating.

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *Richard N. Watts* and *Brian Allen Brown*, for appellant.

*Kitterman Law Firm*, by: *Gregory S. Kitterman*, for appellee.

ROBERT H. DUDLEY, Justice. The defendant, Peter Van Houten, had owned a cat for three years before it bit the plaintiff, Rick Pritchard. During that period it had never shown a disposition toward biting or being abnormally dangerous, and the defendant allowed it to run at large. On March 21, 1992, the cat entered plaintiff's garage and urinated, and, as plaintiff tried to take it outside, it bit plaintiff on his right index finger. As a direct result of the bite, plaintiff has undergone four surgeries, is fitted with a plastic finger joint, and has expended more than $39,000 for medical treatment.

Plaintiff filed this suit against the defendant to recover his damages. The complaint contained one count that alleged strict liability and another that alleged ordinary negligence. The trial court granted a directed verdict on the strict liability count, but submitted the negligence count to the jury. Plaintiff proved that the cat had previously entered his garage and urinated, or "sprayed," to mark his territory as a tomcat. It again urinated in the garage immediately before plaintiff picked it up and it bit him. The jury returned a plaintiff's verdict in the amount of $80,000. The defendant appeals. We reverse and dismiss.

In order to fully address the arguments, we first set

out the doctrine of strict liability as it relates to this case. Strict, or absolute, liability is a common law rule by which a defendant is made liable for doing some ultrahazardous act. When a defendant carries out such an ultrahazardous act he is liable irrespective of negligence. Under one phase of the rule of absolute liability, the owner of an animal is strictly liable for injuries inflicted on a plaintiff if (1) the animal was of a vicious species, or (2) the animal, though domesticated, had dangerous tendencies which were known to the owner. Jacob Sharp, Jr., Comment, *Absolute Liability in Arkansas*, 8 Ark. L. Rev. 83 (1953). This court first adopted this phase of the rule in *Holt* v. *Leslie*, 116 Ark. 433, 173 S.W.2d 191 (1915), and has subsequently reaffirmed it in a number of cases. To illustrate this phase of the rule, assume that the owner of a dog known to be vicious keeps the animal in a steel cage and exercises extreme care to prevent its escape. The animal, however, does escape, through no fault of its owner, and attacks an innocent passerby. The dog's owner is strictly liable regardless of any precautions he may have taken to avoid the dog's escape. *See Strange* v. *Stovall*, 261 Ark. 53, 546 S.W.2d 421 (1977); *see also* J. Herman Ivester, Note, *Torts—AMI 1602 and 1603—Strict Liability or Negligence?*, 24 Ark. L. Rev. 593 (1971).

■    Appellant refers to this aspect of the rule as the "one bite" rule of strict liability. Actually, the label "one bite" is out of harmony with a modern humanitarian society and our holdings, and we have said that it is not necessary to prove that the owner knew that his animal had ever before bitten anyone; rather, it is only necessary to prove that the owner had notice of the propensities of the animal to injure people. *Bradley* v. *Hendricks*, 251 Ark. 733, 474 S.W.2d 677 (1972). We have also held that if the owner of an animal has notice of its propensity to injure people, it is immaterial whether the animal acts out of savagery or out of playfulness. *Finley* v. *Smith*, 240 Ark. 323, 399 S.W.2d 271 (1966). In this case the trial court held that the plaintiff failed to prove the cat had a propensity to injure people, which was known or should have been known by the defendant, and granted a directed verdict on the strict liability count. The plaintiff does not cross-appeal from that directed verdict. As a result, the law of the case is that the defendant-appellant did not know, or have reason to know, the cat had a propensity to injure people.

The defendant-appellant, in part of his argument, contends

that there is no cause of action for ordinary negligence in allowing a domestic animal to run at large. The argument is partially correct. However, there are some causes of action for ordinary negligence in allowing domestic animals to run at large. The owners of cattle, horses, and other large farm animals that could cause substantial damage if allowed to run at large have a duty to control their animals. *See* AMI Civ.2d 1601. In *Finley* v. *Glover*, 229 Ark. 368, 315 S.W.2d 928 (1958), we affirmed a judgment because the defendant negligently allowed his livestock to enter on the plaintiff's rice field and graze. There have been numerous cases involving the negligent maintenance of fences and the resulting damage caused when livestock escaped and entered a roadway. *See, e.g., Smith* v. *R.A. Brooks Trucking Co.*, 280 Ark. 510, 660 S.W.2d (1983); *Cosby* v. *Oliver*, 265 Ark. 156, 577 S.W.2d 399 (1979); *see also* Ark. Code Ann. § 5-62-122 (Repl. 1993).

In *Rogers* v. *Stillman*, 223 Ark. 779, 268 S.W.2d 614 (1954), we held that violation of a statute prohibiting livestock from running at large was evidence of ordinary negligence. In *Bolstad* v. *Pergeson*, 305 Ark. 163, 806 S.W.2d 377 (1991), we affirmed a judgment for damages caused when the defendant allowed his dog to run at large in violation of a leash law. We held that violation of the leash law was some evidence of ordinary negligence.

Contrary to the above cited ordinary negligence cases, the case at bar does not involve a large domestic animal which will invariably cause damage if allowed to roam at will, and neither does it involve the violation of a leash law. Instead, it involves a domestic animal that is not likely to do harm if allowed to run at large. Whether a duty is owed between the parties is a matter of law, *Stacks* v. *Arkansas Power & Light Co.* 299 Ark. 136, 771 S.W.2d 754 (1989), and there is no duty to control a domestic animal that is not likely to do harm if allowed to run at large. Section 518 of the Restatement (Second) of Torts provides:

Liability for Harm Done by Domestic Animals That Are
Not Abnormally Dangerous

Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,

(a) he intentionally causes the animal to do the harm, or

(b) he is negligent in failing to prevent the harm.

Restatement of Torts § 518 (1989).

Further, it provides:

> *Animals permitted to run at large.* There are certain domestic animals so unlikely to do harm if left to themselves and so incapable of constant control if the purpose for which it is proper to keep them is to be satisfied, that they have traditionally been permitted to run at large. This class includes dogs, cats, bees, pigeons and similar birds and also poultry, in a locality in which by custom they are permitted to run at large, and therefore are not regarded as livestock for whose intrusion upon the land of another their possessor is strictly liable under the rule stated in § 504. It would be impossible to confine bees within the owner's premises without entirely destroying their usefulness as honey producing insects except at prohibitive expense. Although it is not impossible to confine dogs to the premises of their keepers or to keep them under leash when taken into a public place, they have been traditionally regarded as unlikely to do substantial harm if allowed to run at large, so that their keepers are not required to keep them under constant control. The same is true of cats. However, although the possessor or harborer of a dog or cat is privileged to allow it to run at large and therefore is not required to exercise care to keep it under constant control, he is liable if he sees his dog or cat about to attack a human being or animal or do harm to crops or chattels and does not exercise reasonable care to prevent it from doing so.

*Id.*, § 518 cmt. j.

■■ In summary, the owner of a domestic cat may permit his cat to run at large unless it has shown a propensity toward violence, or unless an ordinance or statute provides otherwise. The trial court ruled that the defendant had no notice of any propensity toward violence by the cat and granted a directed verdict on the issue of strict liability. The plaintiff does not cross-appeal

from that ruling. The law of the case then is that the plaintiff failed to prove the cat had a propensity toward violence. In addition, the plaintiff failed to prove violation of any kind of leash law. Thus, the defendant had no duty to confine or control the cat, and the trial court erred in instructing the jury that the defendant had a "duty to use ordinary care to keep the cat from running at large." The defendant-appellant is also correct in his argument that the trial court also erred in refusing to grant a directed verdict since the defendant had no duty to control the cat and, as a result, did not breach a duty to confine or control the cat. Because of the errors, we must reverse and dismiss.

Reversed and dismissed.

HOLT, C.J., and HAYS, J., dissent.

GLAZE, J., not participating.

STEELE HAYS, Justice, dissenting. The majority summarily concludes that "the owner of a domestic cat may permit his cat to run at large unless it has shown a propensity toward violence, or unless an ordinance or statute provides otherwise." Because I believe there are circumstances under which an owner may be liable for failure to exercise ordinary care to control or restrain a domestic animal, I disagree with the majority's decision.

Peter Van Houten (defendant below) has appealed the trial court's decision denying his motion for directed verdict and his motion for judgment notwithstanding the verdict on the issue of ordinary negligence. An appeal from the denial of a motion for a directed verdict or jnov is a challenge to the sufficiency of the evidence, and the test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Cleveland* v. *State*, 315 Ark. 91, 865 S.W.2d 285 (1993). Substantial evidence is that evidence which is forceful enough to compel a conclusion, one way or the other, beyond suspicion or conjecture. Id. In determining whether substantial evidence exists, we review the evidence in a light most favorable to the appellee. *Coleman* v. *State*, 314 Ark. 143, 860 S.W.2d 747 (1993).

I also except to the assertion of the majority that, because the plaintiff (appellee) did not cross appeal from the directed verdict on the issue of strict liability, the law of the case is the

plaintiff failed to prove the cat had a propensity toward violence. There was no onus on appellee to cross appeal. "A cross appeal is required only when the appellee seeks affirmative relief that he failed to obtain in the trial court, not when he won the case below and merely asks that the judgment be affirmed." *Moose* v. *Gregory*, 267 Ark. 86, 590 S.W.2d 662 (1979). The trial court's directed verdict addressed only the claim of strict liability, not the claim of negligence, and having prevailed on that theory the appellee asks only that the judgment be affirmed. Indeed, in order for a person injured by a domestic pet to recover from the pet's owner *without the necessity of proving the owner's negligence*, he must prove that the animal had vicious tendencies or propensities. *Bradley* v. *Hendricks*, 251 Ark. 733, 474 S.W.2d 677 (1972); *Hamby* v. *Haskins*, 275 Ark. 385, 630 S.W.2d 37 (1982). However, to make a prima facie case of negligence, the plaintiff need only show that under the circumstances the defendant failed to exercise ordinary care to control or restrain. *Rickrode* v. *Wistinghausen*, 340 N.W.2d 83 (Mich. App. 1983); *Restatement (Second) of Torts* § 518 (1977); Cheryl Bailey, Annotation, *Liability—Injury Caused by Cat*, 68 A.L.R.4th 823, § 2a (1989). *Restatement (Second) of Torts* § 518 (1977), comment h, states that an owner of a domestic animal is required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances. Further, comment k provides that there may be circumstances under which it will be negligent to permit an animal to run at large, even though it is of a kind customarily allowed to do so and under other circumstances there would be no negligence.

We have defined negligence as the failure to do something that a reasonably careful person would do; a negligent act arises from a situation where an ordinarily prudent person in the same situation would foresee such an appreciable risk of harm to others that he would not act or at least would act in a more careful manner. *White River Rural Water Dist.* v. *Moon*, 310 Ark. 624, 839 S.W.2d 211 (1992). Further, it is not necessary to foresee a particular injury, but only to foresee that the general act or omission is likely to cause injury. *Bolstad* v. *Pergeson*, 305 Ark. 163, 806 S.W.2d 377 (1991).

Applying the substantial evidence standard to the facts of this instant case, I find the evidence of negligence was more than

substantial. Mr. Van Houten agreed that "when a tomcat is in his mating cycle that they get a little hostile sometimes." He was aware that his cat roamed around and had been seen "spraying" in Mr. Pritchard's garage/upholstery shop. Mr. Van Houten knew the Pritchards had a female cat that they allowed to enter through their garage. Nevertheless, Mr. Van Houten left his cat outside for the weekend to fend for itself without food or water. Once again, Mr. Pritchard discovered the cat in his garage. As Mr. Pritchard was attempting to remove the cat, the cat bit him and would not let go. Mr. Pritchard testified that the cat held on and had to be slung loose. It was not a case of the cat biting simply to escape, it had to be forcibly disengaged.

Further, Mr. Van Houten acknowledged that while he was aware his cat was roaming the neighborhood and being a nuisance to others, he did not care and it was his common practice to allow the cat to run at large when he and his wife went to the lake for the weekend. It is significant that Mr. Van Houten did not see to it that his cat was vaccinated, a clear violation of Ark. Code Ann. § 20-19-202 (1987). Although he first stated the cat's vaccinations were current, Mr. Van Houten admitted the cat had only been vaccinated years ago as a kitten. It is also material that the subdivision's bill of assurance provides: "All household pets on the property shall be kept on a leash at all times when they are outside of a residence constructed on a lot." Finally, upon returning from the doctor's office the day after he was bitten, Mr. Pritchard informed Mr. Van Houten the cat needed to be quarantined for ten days. Although the cat was sitting in the window at that time, Mr. Van Houten turned the cat loose that evening and it has not been seen since.

The evidence, as I view it, was entirely sufficient to support the jury's conclusion that Mr. Van Houten failed to exercise ordinary care.

HOLT, C.J., joins in this dissent.